WILLIAM W. HANNAN v. THE WILLIAMSBURGH CITY FIRE INSURANCE COMPANY OF BROOKLYN, NEW YORK.

*Fire insurance—Dwelling-house—Construction of policy — Occupancy.*

The words, " occupied as a dwelling-house," when used in a policy of insurance, do not necessarily exclude the idea that some part of the building may be used as a stable. If the family live in the building, it is not deprived of its character as a dwelling because the domestic animals are also housed there.

So *held,* where the policy covered "one two-story frame building and additions thereto, occupied by assured as a dwelling-house," which is held to cover a carriage-house and stable under the same roof, and in the rear of the portion occupied for dwelling purposes, but attached thereto.

Error to Wayne. (Gartner, J.) Argued June 5, 1890. Decided June 27, 1890.

*Assumpsit.* Plaintiff brings error. Reversed, and judgment entered here for plaintiff for $884.82, with interest from the time when the money became due under the policy. The facts are stated in the opinion.

*A. C. Blodgett* and *John D. Conely,* for appellant.

*DeForest Paine* (*Thomas Bates,* of counsel), for defendant.

CAHILL, J. This action is brought upon a contract of insurance, in which the property is described as follows:

"One two-story frame building and additions thereto, with shingle roof, occupied by assured as a dwelling, situate on the south side of, and known as No. 72, Winder St., Detroit, Michigan, including the foundations, gas and water pipes and fixtures, and all permanent fixtures for heating and lighting, as part of the building."

On April 20, 1889, a fire occurred on the plaintiff's premises, by which loss occurred to the plaintiff amounting to $1,769.64. Of this amount $873 was appraised for damages to the building north of a certain line shown on the diagram, and $896.64 for damages to the building south of the same line. No question is raised by the defendant as to the right of the plaintiff to recover the first amount, but it was claimed that the last amount could not be recovered, because that sum covered damages to the rear part of the building, which was used as a barn, and that the policy did not cover it. This is the sole question in the case. A diagram of the first floor of the building will be found on page 558.

The plaintiff, being called as a witness, described the building as follows:

"As you enter, there is a hall running from the front door back to the dining-room. On the right-hand side as you enter there is a drawing-room. On the left-hand side is the sitting-room, and the sitting-room is connected with the library room by arches. This does not exactly show it there. Here is the fire-place, and there is an arch on each side of the fire-place. Going through the hall you come directly into the dining-room, and to the right of the dining-room is our kitchen. In the rear of the kitchen is a back hall, which leads both to the laundry and to our wood-shed, and an exit out to this court, where the clothes are dried, and then to John R. street. There is also an entrance from this court into the stable and carriage-house, and there was an old entrance through the coal and wood shed into the stable there, but afterwards we closed that up, and used the outside entrance entirely."

The proofs also show that the partition between the room marked "coal and wood" and the room marked "carriage-house" was a single row of studding. It was not lathed or plastered on either side, but was boarded with plain boards, not siding. It was framed in with the rest of the building. The partition between the part

of the building marked "kitchen" and "dining-room" and the part marked "laundry" was also single, though this was lathed and plastered. It is not possible to take away the room that was called the "carriage-house" without taking away the partition between it and the room called "coal and wood room." There were bed-rooms above the main part of the building. The portion above the laundry was a store-room. The girl's room was above the kitchen. The hired man's sleeping-room was above the portion marked "carriage-house." The man's room was furnished the same as any bedroom in any portion of the house. It had gas, a speaking tube, and everything just as the rest of the house. The gas-pipes connected with the rest of the house. The hired man was also a house-servant. He did general work about the house, and waited upon the ladies of the house. He took his meals at the house. The manner of occupancy at the time of taking the insurance and at the time of the fire was the same. On the first floor of the portion marked "carriage-house" plaintiff kept two horses and three vehicles,—a carriage, a phaeton, and a cart. He had formerly kept a cow. There was a private alley at the rear of the building, in which was a box into which the sweepings from the carriage-house were thrown. The partition that was between the portion marked "coal and wood" and the portion marked "carriage-house" did not extend above the first floor, so that there was no partition in the second story between these portions; it was one room.

I agree with counsel for defendant and with the court below that there is nothing ambiguous about this policy. It is very clear to me that the intention was to insure this building with its additions. I find no warrant in the policy for excluding any part of the additions from

its terms. It was all under one "shingle roof." The part used as a stable was as much a part of the "building and its additions" as the wood-house or the laundry. If it had been used for either of these purposes, no one would have questioned its being a part of the building insured. Does the use to which a room is put determine whether it is a part of a building or not? Its use for a purpose not covered by the policy might avoid it altogether, but no such force is claimed for it here. If such a claim had been made, then it would certainly have been competent for the plaintiff to put in the parol evidence that was offered and rejected to show that the actual facts about the occupation of the building were known to the company when the policy was issued. *Aurora Fire Ins. Co. v. Kranich,* 36 Mich. 289; *Mich. State Ins. Co. v. Lewis,* 30 Id. 41.

I am not prepared to say that the words, "occupied as a dwelling-house," when used in a policy of insurance, necessarily exclude the idea that some part of the building may be used as a stable. If the family live in the building, it is not deprived of its character as a dwelling because the domestic animals are also housed there. Nor does this view conflict with the doctrine in *English v. Ins. Co.,* 55 Mich. 273, cited by defendant's counsel. In that case the barn which it was sought to bring within the term "dwelling-house and additions" was a separate building, detached about 40 feet from the dwelling, and there was in the policy that which made it clear to the learned Judge who wrote the opinion that the barn was not intended to be included in the general term "dwelling-house."

The judgment must be reversed, and, as no question is made as to the amount of the recovery if the entire building is to be included, a judgment will be entered

here for $884.82, with interest from the time when the money became due under the policy, and costs of both courts.

The other Justices concurred.