THE GUTHRIE LAUNDRY COMPANY v. THE NORTHERN ASSURANCE COMPANY OF LONDON.

(Filed September 7, 1906.)

FIRE INSURANCE— Property Covered By Policy. In an action on a policy on a "Two story basement and brick building, with metal roof, and its additions adjoining and communicating, including foundations, occupied as a steam laundry", it appears that a steam pipe 2 1-2 inches in diameter conveying the power for the engine situated in the main building, a partially completed platform and overhead arch between the buildings, and a sidewalk along the side, were the only connections between the main building and the boiler house situated about four feet distance therefrom: Held: That the policy included the boiler house.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford. Trial Judge.*

*Hunt & Chappell,* for plaintiff in error.

*Howard & Fulton,* for defendant in error.

Opinion of the court by

PANCOAST, J.: This was an action brought in the district court of Logan county by the Guthrie Laundry Company against the Northern Assurance Company, of London, to recover upon a policy of insurance, for loss by fire to property alleged to have been covered by such policy at the time of the fire. A stipulation in the policy as to the property covered is as follows:

"One thousand dollars on their two story basement and brick building, with metal roof, and its additions adjoining and communicating, including foundations, occupied as a steam laundry * * *."

The laundry was in the process of construction at the time the policy was written, also at the time of the fire, and consisted of a main building 51 by 100 feet in size and in the rear of that, about four feet distant, a boiler room 22 by 33 in its dimensions. A two and a half inch steam pipe ran from the boiler house to an engine in the center of the main building, being the means by which the power was transmitted from the boiler to the other machinery employed in operating the laundry. The boiler house was joined or connected with the main building by means of framework of beams designated as 2 by 6's in the testimony, for an overhead archway, and also by a partially completed platform and sidewalk at the bottom, it being the intention to roof the

archway over with brick, and there store material for use in the laundry work.   The frame work was constructed and in position for the platform or sidewalk running from the east door of the main building to the east door of the boiler house. Each structure had its separate walls, and there was no connection between the two, other than the steam pipe, and the framework above mentioned.

Liability for the loss of the boiler room was denied on the ground it was not covered by the clause in the policy, above quoted.   At the trial, after plaintiff below had rested its case, the assurance company demurred to that portion relating to the damage done to the boiler house, for the foregoing reason, which demurrer was sustained by the court, and the jury were instructed to confine their deliberations to the evidence of damage done the main building.   To this the plaintiff below excepted.   Verdict was for the plaintiff below for $20.00.   From an order overruling motion for new trial, the plaintiff in error has appealed.

The principal question raised in this appeal is whether the boiler house was, in view of the evidence, covered by the policy of insurance sued upon.

Precedents involving similar questions are at hand.   In the case of *Pettit et al. v. State Ins. Co.,* 43 N. W. 378, the property described in the policy was "grain in St. Anthony elevator building   *   *   *   while contained in the frame, iron clad, metal roof building, occupied for the storage and handling of grain, and known as the St. Anthony elevator." It appeared that the entire property was known as the St. Anthony elevator, and consisted of an engine house, with adjacent elevator containing all the elevating machinery in the

establishment, and also an addition designated as "Annex A," in distinction from the building first described, which was called the "main elevator," or "main elevator building." "Annex A," and the main elevator building were about three hundred feet apart, being connected by two galleries supported by trestles, through which ran a belt conveying on its surface grain from the main elevator building into the "Annex A." The objection being urged that the grain located in "Annex A," was not included in the policy, the two being separate and distinct buildings, it was "Held that the grain in Annex A was included in the policy of insurance, describing it as being in the elevator    *    *    *    and the language used describing the elevator, 'as a frame, iron clad, metal roof building, occupied for the storage and handling of grain,' *Held,* equally applicable to the whole or either division of the elevator, and that if there is doubt or uncertainty as to the meaning of the policy, it must be resolved in favor of the assured."

The case of *Marsh v. Concord Mutual Fire Ins. Co.*, 71 N. H. 253, 51 Atl. 898; cited in the brief of plaintiff in error, is almost parallel to the one at bar. It involved the interpretation of an insurance policy written "on frame, metal roof building and all additions thereto adjoining and communicating    *    *    *    occupied by the assured as a pail shop;" and construing this clause of the policy, Walker, J., comments upon the evidence adduced at the trial as follows:

"The plaintiff was a pail manufacturer. He owned one large building and two small ones located a few feet away. All the buildings were used by him in the prosecution of his manufacturing business and constituted his manufacturing plant. Each was a necessary part of the whole, which was

'occupied' by the assured as a pail shop or manufactory. The frame mill building was not used independently of the small buildings and without the additional buildings it did not constitute the pail shop. In view of the dependent uses of all the buildings in the manufacturing of pails, the word 'additions' was not an inappropriate designation of the two smaller ones, and for the same reason the qualifying words, 'adjoining and communicating,' though perhaps unnecessary, were evidently intended to designate such additional buildings as were necessary appurtenances to the main building in the manufacture of pails. They were adjoining and communicating because they were within a few feet of and next to the mill building and because their common use in the business made it necessary that some communication or connection should exist between them and the main building. The word 'communicating' alone does not convey a definite meaning. The context, purposes and circumstances in view of which it is used must be resorted to to determine its significance in a particular case. The fact that there was a movable bridge between the mill building and the dry house, as well as the fact that steam pipes made physical connection between all the buildings is evidence of some weight, though perhaps not alone sufficient, that the parties' intention when the contract was made was as above indicated. But any doubt that might remain upon the evidence thus far discussed is removed by the consideration that if the dry house and the boiler house are not the adjoining and communicating additions intended, this language can be given no force or significance, for there were no other buildings or additions to which it could refer. It is unreasonable to assume, except from necessity, that language used by parties in a written contract was not intended to express an intelligent idea, or that they employed language having no application or reference to the subject matter of the contract."

Again, in the case of *Home Mutual Ins. Co. of Cal. v. Roe,* 36 N. W. 594, it appeard that the policy covered a plan-

ing mill "and additions," and that the shaft from the engine room furnished the motive power to the mill, and that the shavings from the mill were carried by machinery to the engine house; that these were the only connections between the two buildings, there being a roadway between; yet in holding that the policy included the engine room and engine, the court say:

"Here it conclusively appears that the engine in the engine room was the only motive power for propelling any of the machinery in either of the buildings. The engine was used for no other purpose. It is claimed that the engine room cannot be construed to mean an 'addition' to the planing mill building, because it does not join directly upon the same; but, as we have seen, they were both essential to the completion of the mill. Thus the two buildings were not only connected, but the machinery inseparable, while the whole continued to be a planing mill. The words 'planing mill buildings' would seem to be broad enough to include the engine room."

A case decided by the supreme court of Minnesota, *Cargill et al. v. Millers' & Mfrs.' Mut. Ins. Co. of Minn.*, 22 N. W. 6, is in point, and we quote from the opinion in that case:

"One of the questions in the case is whether the policy covered a warehouse standing near the elevator. The property insured is described in the policy as 'a 'steam power building, and additions, with porches and platforms attached.' The warehouse stood within two and a half feet of the elevator building, and was of about the same size as the elevator. The two were fastened together by strips of board, about 20 in number, nailed upon each building. The further fact is shown that the only means of entrance to the warehouse was by a window which was reached by a ladder, or by

cleats nailed on the side of the building. The court below considered that the warehouse was covered by the policy. We concur in this construction. It was used as a part of the elevator, and was so connected with it, that in view especially of this use, it must be considered as having been intended by the parties to be included in the designation 'elevator building and additions.' "

Other authorities to the same effect are: *Gross et al. v. Milwaukee Mech. Ins. Co.* (Wis.) 66 N. W., 712; *Carpenter v. Allemania Fire Ins. Co.* 156 Pac. St. 37; *Phoenix Ins. Co. v. Martin,* 16 So. 417; *Hannan v. Williamsburgh City F. Ins. Co.* 31 Mich. 556; *Mausel v. Fire Ass'n of Phila.* 60 N. Y. Supp. 181; *Liebenstein v. Baltic Fire Ins. Co.* 45 Ill. 301.

The reasoning of the cases cited, to which many more might be added, applies aptly to the facts in this case. Counsel for defendant in error elaborates with great minuteness his contention that the words "adjoining and communicating" apply only to those structures actually touching or contiguous to the building first designated, but from the authorities cited and others we have investigated, we are led to the conclusion that the adjudicated cases wherein the application of language of similar import is determined do not uphold him in such refinement of construction. It conclusively appears that the boiler house contained the only motive power for propelling any of the machinery in either of the buildings, and was an integral part of the complete laundry, an essential to its proper conduct and operation, and so associated and connected with it that what we conceive to be the true interpretation of the policy cannot fail to include the boiler house within the terms thereof, and particularly within the general description of the property as "occupied as a steam laundry."

As before stated, the motive power originated in the boiler house; was conveyed therefrom through a pipe 2 1-2 inches in diameter to an engine stationed in the center of the main building; an archway overhead had been completed so far as the framework was concerned; and a platform and sidewalk connecting the two portions of the business were in the final process of construction. In our opinion, each of the two buildings was an inseparable part of the whole, and the two, as an entirety, were the subject-matter of the contract, intended to be covered by the policy and in the contemplation of the parties as the location of the "laundry" therein referred to.

The court below very properly assumed the responsibility of determining the meaning of the policy, but it would seem from the authorities hereinbefore referred to that the conclusion reached was not the correct one. The language of the policy, in our opinion, is broad enough to inculde not only the main building, but the boiler house as well, and for that reason it was error to sustain the demurrer of the assurance company to the evidence relating to the destruction or damage to the boiler house in question. Properly construed, the language of the clause above set out must be held to include the boiler house.

Having reached the conclusion that error was committed in this respect, it is unnecessary to discuss other assignments of error. For the reasons given, the judgment of the court below is reversed.

Burford, C. J., who presided in the court below, not sitting; Burwell, J., not sitting; all the other Justices concurring.