## PINE BELT LUMBER CO. v. RIGGS.

No. 9655—Opinion Filed April 6, 1920.

Rehearing Denied Dec. 14, 1920.

(Syllabus by the Court.)

**1. Appeal and Error — Trial — Change of Theory of Case.**

The parties to an action having presented their case, or defense, to the trial court upon a certain, definite theory, are bound thereby, and will not be permitted to change the theory of the case, either at any subsequent stage in the trial court, or in the appellate court upon appeal.

**2. Master and Servant—Duty of Master—Care—Safety of Employe.**

The master is bound to exercise reasonable care and diligence to provide a reasonably safe place in which the employe or servant is to work, and also reasonably safe machinery, tools, and appliances with which to work, and where the master engages to convey the servant back and forth from his house to his work, to supply the servant with a reasonably safe means of conveyance.

**3. Same—Contract Exempting Master from Liability for Negligence—Validity.**

A contract between master and servant, before the happening of an injury, whereby the servant, in consideration of the employment, or of the wages, agrees to release and discharge his master from liability on account of injuries caused by the negligence of his master or of the latter's servants, is forbidden by the Constitution (art. 23, secs. 5, 7, and 8) and statutes of this state, (Rev. Laws 1910, sec. 972), and is void as against public policy.

Error from District Court, Choctaw County; C. E. Dudley, Judge.

Action for damages for personal injuries by Clifford Riggs against the Pine Belt Lumber Company, a corporation. Judgment for plaintiff, and defendant brings error.

McDonald & Jones, for plaintiff in error.

Howe & Stanley, for defendant in error.

JOHNSON, J. This action was commenced in the district court of Choctaw county, by defendant in error, Clifford Riggs, plaintiff below, filing his petition against the plaintiff in error, defendant below, to recover damages upon grounds which are stated substantially as follows:

That at all of the times hereinafter mentioned the defendant owned and operated a lumber manufacturing establishment, including mills, dry kilns, and planers at Fort Towson, in Choctaw county, state of Oklahoma, and in connection therewith and as part thereof, operated a railroad, engines, and rolling stock, which railroad extended for some 15 miles in a northerly direction from Fort Towson and along the line of which the defendant carried on logging operations.

That on the 25th day of June, 1915, this plaintiff was an employe of the said defendant company, engaged in hauling, with wagon and team, logs from the woods along said railroad, to the loading place and places on the right of way of said road; that it was the custom of the defendant company to give to its employes passes or transportation over its road and to permit them to ride on its said trains over its said road, and this plaintiff was, by the said defendant company, given a pass entitling him to ride on the trains of the defendant company from Fort Towson out to his place of work on said road, and back again to Fort Towson.

And further alleges that it was the duty of the company to furnish the plaintiff a reasonably safe place to work and a reasonably safe passage to and from his place of work, reasonably safe engines and road bed on its said railroad.

Then the petition proceeds by alleging that on said day the plaintiff boarded one of the trains of the company on its railroad near his place of work, intending to go to Fort Towson, and that the train in going down a steep grade got out of the control of the train men operating the same and ran away down the grade, and the plaintiff, believing that the only chance to save his life was by jumping from said train, jumped therefrom and was injured as set out in the petition.

Then the plaintiff states in said petition that the cause of the train running away was the fact that the air brakes on the train and steam brakes on the engine and equipment of the engine drawing said train were old, worn, and insufficient, and had been in such condition for a long time, and that the plaintiff had no notice or knowledge thereof, but the defendant knew, or by the exercise of care and diligence might have known, that the said air brakes and steam brakes were old, worn, and insufficient.

And plaintiff further alleges that the company owed the same duty to its employes riding thereon that it would have owed to a passenger if the company had been engaged in passenger traffic.

Then the petition alleges that the company failed to do its duty to the plaintiff in that it did not use ordinary care and diligence for the safe carriage of the plaintiff on its train, in that the air brakes and steam brakes on the engine drawing said train were worn, old, and insufficient, which con-

dition had existed for a long time, and was known or could have been known by the defendant by the exercise of ordinary care and diligence.

Then the plaintiff alleges his jumping from the runaway train, and that in doing so he received a compound fracture of the bone of his right leg and ankle and was otherwise bruised and sprained, and was confined to his bed for a period of 32 days and suffered much physical and mental anguish; that his injuries are permanent; that at the time of his injury he was making $2 a day and that for a long time after the injury he would be unable to do any work or manual labor; that his earning capacity has been greatly and permanently diminished by reason of the injury; that he has an expectancy of 33.92 years and that therefore he has been damaged in the sum of $6,000 for which he prays judgment.

Thereafter and within due and legal time the company filed its answer, consisting of a general denial; also denial of the fact that the plaintiff was exercising due care for his safety; and alleging that any injury received by him was caused by his own want of care; and further answering that plaintiff had full knowledge of all of the conditions and assumed the risk thereof; and specifically alleged that said company did not own and operate a railroad as a common carrier, but simply had said track as a tramway for the purpose of conveying logs from the forest to the saw mills of said defendant, as alleged in plaintiff's petition, and that said company was in nowise engaged in the carrying of passengers as a common carrier on its railroad. Then the company pleads as a specific defense and further ground as follows:

"For further answer said defendant alleges and avers that the said plaintiff with said knowledge aforesaid and before he boarded said train of said defendant executed and delivered a certain instrument in writing thereby releasing, waiving and discharging the said defendant of and from any and all damages and liability which he, said plaintiff, might receive while riding upon the train of said defendant; and said defendant pleads the same as a bar to recovery by said plaintiff against said defendant in this action."

Thereafter, and within due and legal time, the plaintiff filed his reply, which is as follows:

"Now comes the plaintiff in the above-entitled cause, and for reply to the answer of the defendant filed herein, denies each and every allegation of new matter therein contained, and again prays judgment as prayed in his petition."

The cause was tried to a jury, and resulted in a verdict in favor of the plaintiff for $6,000, the amount sued for, to reverse which this proceeding in error was regularly commenced by petition in error filed in this court on December 18, 1917, with case-made attached, wherein 17 specific assignments of error are contained.

Counsel for defendant first present in their brief, assignments of error Nos. 3, 10, 11, 12, 13, and 17, which are respectively as follows:

"3d. Error of said district court occuring at the trial."

"10th. Error of the district court in rejecting and refusing the said defendant below the right to introduce in evidence a certain written instrument denominated defendant's Exhibit A, the same being a release or waiver of damages signed by the said plaintiff below."

"11th. Error of the district court in giving to the jury instruction No. 5."

"12th. Error of the district court in giving to the jury instruction No. 6."

"13th. Error of the district court in giving to the jury instruction No. 9."

"17th. That the said court erred in refusing and ruling out competent and legal evidence on the part of the plaintiff in error."
—and discuss under such assignments the following proposition:

"It was the contention of the defendant below and is still such contention that the relation of master and servant never existed between said company and plaintiff, but that the plaintiff was an independent contractor, and that therefore there was no duty resting on the company to furnish the plaintiff a safe place to work; and particularly inasmuch as he was not a servant or employe of the company, there was no consideration whatsoever moving to the company in permitting the plaintiff to ride on its train, but that the same was purely and simply gratuity to the plaintiff."

By this proposition it is attempting to urge in this court for the first time the defense that the plaintiff was an independent contractor. And so we hold in the course of this opinion, as hereinafter set out. But, notwithstanding such holding, inasmuch as the trial court held, in effect, as a matter of law, that the plaintiff was not an independent contractor and the holding has been assigned as error, we will consider the question briefly.

The contract of employment was oral, the plaintiff testified; also as to the exact nature of the employment his testimony was not disputed. he being the only witness who testified as to the same. The defendant offered

no testimony concerning that matter. The plaintiff testified that on the day he reported for duty the train was about ready to go and—"he (Mr. Coffman) told me to go out and see Mr. Parrott, the woods foreman, and to get a pass from him. I did so, and he went and showed me the timber"; that he worked for the company 22 months, during which time he went back and forth upon the engines of the company; that he was paid once a month, on the 15th; that the woods foreman directed his work; there were two or three of them besides Parrott that he worked under; "they would show me where to haul and where to put the logs"; that he hauled from several tracts of land and unloaded at several different places; that he furnished his own team and was paid by the thousand, was paid different prices according to the length of the haul; that the company could discharge him if it wanted to; that he had no contract for any specific amount; that he put in the whole 22 months up to the time that he was injured; that at any time he failed to work the company could fire him; that he employed some helpers; that the company directed them where to work as well as him, and the company paid them out of amounts due from the hauling by the thousand upon his orders.

That question was before this court in the case of Chicago, R. I. & P. R. Co. v. Bennett, 36 Okla. 358, 128 Pac. 705. The facts in that case disclosed by the opinion were as follows:

"His contract of employment was oral. He says he heard there was a vacancy, and applied in person for the job; that he was told to go to work that night, that the company would try him and see how long he would stay. Plaintiff says nothing was said at the time about how he was to be paid, whether by the day, week, month, or ton, but that shortly thereafter he learned he was to be paid by the ton. * * * The station agent and night watchmen both disclaimed any authority to direct plaintiff in his work. It was also shown that upon occasions plaintiff had hired a neighbor, paying him a pig to help him shovel coal. It appears that as engines came in the engine watchman would run them to some convenient place in the yards, then draw a car of coal alongside, and plaintiff would then shovel coal into the tender of the engine. It is also shown that the station agent directed the engine watchman which cars to unload, and the watchman would then direct plaintiff what cars to unload first, etc.; that plaintiff would assist in switching engines and cars and in spotting them to be coaled; and that the other employes sometimes assisted plaintiff in his work. The lantern and other instrumentalities for plaintiff's work were furnished by the defendant.

"The defendant bases its contention in the main that the plaintiff was an independent contractor on the fact that he was paid by the ton for his work, and the evidence of the station agent that he did not give plaintiff any direction or exercise any control over him as to how he unloaded the coal into the tenders. The generally accepted rule of law is (section 622, 1 Thompson, Neg.).: 'An independent contractor, within the meaning of this rule, is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. * * * In every case the decisive question is: Had the defendant the right to control, in the given particular, the conduct of the person doing the wrong? Does he reserve to himself the essential power of a master? It is but another form of language expressing the same idea to say that the true test to determine whether one who renders service to another does so as a contractor or not is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. On this question the contract under which the work has been done must speak conclusively in every case, reference being had, of course, to surrounding circumstances. This being so, the mere fact that the agent who did the injury carried on a separate and independent employment will not absolve his principal from liability. "If such were the rule, a party would be exempt from responsibility even for the negligent acts of his domestic servants, such as his cook, coachman, or gardner." '

"And, further, the same author, in discussing the manner of payment as bearing on the relation between the parties, says: 'Sec. 629. In determining whether the relation is that of master and servant, or that of proprietor and independent contractor, the courts have sometimes taken into consideration the manner of payment, whether payment was to be made by the day, week, month, etc., with a reservation of the power to discharge, or whether there was to be a payment by the piece or by the entire job, but the mode of payment is not a decisive test by which to determine this question. The test lies in the question whether the contract reserves to the proprietor the power of control over the employe. That the mere fact that the work being performed by an employe at the time he was injured was done by the piece or job, as by payment of a stated price for each car loaded, does not deprive him of the character of an employe, where he was a mere servant carrying out the employer's will and instructions.'

* * *

"In this case the employment was general. Many or few engines were to be provided with coal according to the demands of business. There was no particular manner of doing

the work; no particular place in the yards for it to be done. The work was to be done where and when and as much of it as the needs of the employer might require. If this coal heaver was a contractor and not a servant, every coal miner in this state occupies toward the company for which he works the same relation. It is common knowledge that the miner furnishes his entire equipment of tools, his oil, and lamp, and his powder, fuse, and caps, and receives a stipulated price per ton for the coal mined; yet we doubt if any one would now seriously urge in this jurisdiction, where the courts are full of mining cases, that the coal miner sustains that relation to his company. It has been held, however, that he does not sustain such relation. Drennen & Co. v. Smith, 115 Ala. 396, 22 South. 442; Lake Superior Iron Co. v. Erickson, 39 Mich. 492, 33 Am. Rep. 423. We therefore conclude that in this case it is shown that the relation existing between the parties at the time of the injury was that of master and servant. * * * But although the contract may be oral, if there is no dispute as to its terms, or if but one inference can be drawn from the evidence, then the question whether the relation is that of employer and independent contractor, or that of master and servant, is for the court. Moll, Ind. Contr. secs. 28, 29; Folley v. Felrath, 98 Ala. 176, 13 South. 485, 39 Am. Rep. 39, and authorities cited; Drennen & Co. v. Smith, 115 Ala. 403, 22 South. 442. The evidence in this case presents no substantial conflict relative to the employment of plaintiff; and, taking into consideration the nature and character of the work, the duties involved, the methods pursued, and the necessary interest and concern of each of the parties in the time, place, and manner of doing the work and in the results to be accomplished, we have no hesitancy in holding that but one reasonable inference could be drawn from the evidence as to the relation of the parties, and that is that such relation was that of master and servant. This being the case, the court very properly under the facts presented refused to submit the question to the jury." Harrison v. Central Const. Corporation et al. (Md.) 108 Atl. 874, parags. 1 and 2, syllabus.

The trial court, we think, properly overruled the contention of counsel in this respect.

In the court below the defendant did not, in its answer, or in any requested instruction, raise that question, but, on the other hand, proceeded upon the theory that it had a perfect defense as a result of this release from liability, and to the plaintiff's allegations set forth in his petition to the effect that at the time he received his injuries the relation of master and servant existed between the plaintiff and defendant and had so existed for a period of 22 months, the defendant pleaded the defense of assumption of risk by, and contributory negligence of, the plaintiff.

This court has universally held that:

"The parties to an action, having presented their case or defense to the trial court upon a certain, definite theory, are bound thereby, and will not be permitted to change the theory of the case either at any subsequent stage in the trial court or in the appellate court upon appeal." Town of Comanche v. Works, 69 Oklahoma, 172 Pac. 60; Edwards v. Phillips, 70 Oklahoma, 172 Pac. 949; Queen Ins. Co. v. Cotney, 25 Okla. 125, 105 Pac. 651; Herbert v. Wagg, 27 Okla. 674; Checotah v. Hardridge, 31 Okla. 742; Watson v. Taylor, 35 Okla. 768; First Nat. Bank v. Hinkle, 65 Oklahoma, 162 Pac. 1092.

Counsel for the defendant say in what they denominate part 2 of their brief:

"So, if this court should disagree with us as to whether or not Riggs was an independent contractor and should decide that he was a servant of the company, we still wish to present the case as to the errors committed upon the trial of the case on that theory, as that is the theory upon which the case was tried by the court below. and in this connection we desire to present together, assignments of error Nos. 7, 8, 9, 10, 11, 12, 13, and 14."

Assignment of Error No. 7 is:

"Error of the district court in refusing to give to the jury peremptory instructions requested by defendant below to render a verdict in favor of said defendant."

There is no merit in this contention. As was said by this court in the case of C., R. I. & P. R. Co. v. Rogers, 60 Okla. 249, 159 Pac. 1132:

"In cases involving negligence, when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered one of law for the court. Where, from facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence or contributory negligence, such questions are properly for the jury. Missouri, K. & T. R. Co. v. Shepherd, 20 Okla. 626, 95 Pac. 243; Harris v. Missouri, K. & T. R. Co., 24 Okla. 341, 103 Pac. 758, 24 L. R. A. (N. S.) 858; St. Louis & S. F. R. Co. v. Loftis ,25 Okla. 496, 106 Pac. 824; Sans Bois Coal Co. v. Janeway, 22 Okla. 425, 99 Pac. 153; St. Louis & S. F. R. Co. v. Copeland, 23 Okla. 837, 102 Pac. 104; Mean v. Callison, 28 Okla. 737, 116 Pac. 195."

Therefore, the trial court properly refused the instruction complained of.

We will next consider the defendant's 10th assignment of error, which, as stated in the brief, is as follows.

"Error of the district court in rejecting and refusing the said defendant below the right to introduce in evidence a certain written instrument denominated defendant's Exhibit A, the same being a release or waiver of damages signed by the said plaintiff below."

The record discloses that at the time of the injury complained of, the defendant, Pine Belt Lumber Company, a corporation, owned and operated at Fort Towson, saw mills, planing mills, and drying kilns, and in connection therewith a line of railroad from its mills out into the pineries for a distance of about 33 miles, and maintained spurs and switches on its line, said road being a standard-gauge railroad with steel rails, and rolling stock used by the defendant consisting of seven locomotives and engines, and single-and double-deck flat-cars for hauling saw logs from the pineries to its mills, and that it employed about 150 men working at the mills and in operating its railroad and cars, and about the same number, or perhaps more, in the woods or pineries engaged in getting logs to and upon the cars; the president testifying that it had from 300 to 400 men upon its pay-rolls.

The injury occurred on June 25, 1915, and the plaintiff testified that he had been working for the defendant continuously for 22 months preceding the injury; that he was employed by the defendant's general manager, John Coffman, in the business of hauling, with wagon and team, logs from the woods along said railroad to the loading place or places on the right of way of same; that it was the custom of said defendant company to give to its employes passes or transportation over its said railroad and to permit them to ride on its trains operated over said road; and that he was given such pass by the defendant company, and that the said Coffman, general manager, told him that if he took a job of hauling logs he should have a free pass over the road to and from his place of work from Fort Towson and that he could ride on the engine of the company, and that such transportation was issued to him and that he was riding upon the same at the time of the injury, and that he had so ridden upon such pass backward and forward during the course of his employment; that he was coming in from his work on the day of the injury and while the train was running down the mountain, the same consisting of six double-deck cars loaded with logs and two engines, and while he was on the front engine the train started down the mountain and ran away; that at the "Y" No. 4 an engine was down there waiting for the train to come with the logs, such train standing on the main line, and there was a switch, and that as the runaway train approached the switch, the brakeman, fireman, and engineer all jumped off and that plaintiff also jumped, and he received his injuries when he struck the ground; that he was injured in the several ways set out in his petition, and was in bed 32 days; that when he got out he was able to walk with a stick and crutch, which he did for a period of seven or eight months thereafter; that he suffered great pain as a result of the injury, and had ever since; that he was a common laborer, and had no other means of earning his support, was 32 years of age, was earning about $2 a day, and that his life expectancy as shown by the American Table of Mortality, which was offered in evidence, was 33.92 years; that he knew nothing of the defective condition of the brakes on the cars and engines; that he had paid out sums of money for medical treatment and services and had contracted to pay other sums, which he had been unable to pay; that his injuries were permanent; that he is unable to perform any work that required him to be on his feet, which fact was also testified to by a physician, Dr. H. H. White.

The brakeman, fireman, and engineer composing the train crew all testified that the runaway occurred because the engine and cars were not supplied with brakes sufficient to control the train; that there was no brake on the train at the time of the accident and had not been for some months previous; that two of the cars had airbrakes, but they were in bad condition, were leaking, had leaky valves.

One of the witnesses testified: "The train didn't have any brakes, or she would have held her, the reason why she couldn't hold her, she didn't have any brakes on." These witnesses all testified to the same effect. This testimony was disputed by the president of the defendant company and the mechanic stationed at the repair shops of the defendant out in the pineries. There was no testimony disputing the fact that the plaintiff was injured and that his injuries were permanent and of the kind and character alleged in his petition, and that he received his injuries in the way and manner alleged.

The defendant took the position at the trial that it was not engaged in the railroad business or that of a common carrier of passengers or freight for hire, and offered in evidence paragraph 2 of its amended charter:

"This corporation is organized for the following purposes: To purchase, sell, own and lease, and generally deal in timber and timber land; to manufacture, purchase and sell lumber and the products of lumber, at wholesale and retail; to own and operate a store of general merchandise and transact such other business as may not be inconsistent with these purposes"

—concerning which S. Beckner, president of the defendant company, testified as follows:

"By Mr. Jones: Q. Mr. Beckner, I will ask you what the Pine Belt Lumber Company uses it's railroad track and locomotives for? A. Uses them for hauling logs. Q. I will ask you if it provides any way or means for carrying passengers? A. No, not as a rule. Q. Other than employes or persons connected with the company? A. Nothing at all. Q. You have no coaches, passenger coaches, have you? A. No, sir. We have an old car called the grocery car; sometimes people ride in it when it is going. Q. You don't carry any people in that for hire, do you? A. No. Q. And the purpose of your company, the purpose of your road is to convey logs from the forest to the mill at Fort Towson? A. That's the purpose. Q. That's what you use it for? A. Yes, sir."

We fail to find any evidence in the record to the contrary. We therefore conclude that the defendant was engaged in the business of manufacturing lumber and products of lumber, and, as the trial court held, the relation of master and servant existed between the parties at the time of the injuries complained of, and that the negligence charged by the plaintiff constituted, in effect, a neglect to perform or properly observe one of the nondelegable duties imposed by law upon the master where such relation is shown to exist—that of failure upon the part of the master to provide the servant an ordinary safe place in which to work and with ordinary safe tools and appliances with which to work; that the railroad and equipment of the defendant were merely instrumentalities used and employed by the defendant in the conduct of its business of manufacturing and dealing in its products, and in hauling employes back and forth.

The allegations of the plaintiff in his petition were as follows:

"1. That at all times hereinafter mentioned the defendant owned and operated a lumber manufacturing establishment, including mills, dry kilns and planers at Fort Towson, in Choctaw county, state of Oklahoma, and in connection therewith and as part thereof operated a railroad, engines, and rolling stock, which railroad extended for some fifteen miles in a northerly direction from Fort Towson, and along the line of which the defendant carried on logging operations.

"2. That on the 25th day of June, 1915, this plaintiff was an employe of said defendant

company, engaged in hauling with wagon and team, logs from the woods along said railroad, to the loading place and places on the right of way of said road; that it was the custom of the defendant company to give to its employes passes or transportation over its railroad and to permit them to ride on its said trains operated over its said road, and this plaintiff was, by the said defendant company, given a pass entitling him to ride on the trains of said defendant company from Fort Towson out to his place of work on said road, and back again to Fort Towson.

"3. That it was the duty of the defendant to furnish to this plaintiff a reasonably safe place to work, and a reasonably safe passage to and from his place of work, reasonably safe engines and roadbed on its said railroad."

The 6th paragraph of the defendant's answer was as follows:

"And this defendant further specifically alleges and avers that it does not own and operate a railroad as a common carrier, but simply has said track as a tramway for the purpose of conveying logs from the forest to the sawmills of said defendant as alleged in plaintiff's petition, and is in no wise engaged in the carrying of passengers as a common carrier upon its said railroad."

Upon these issues the court charged the answer was as follows:

"1. You are instructed that negligence is the failure to exercise that degree of care and diligence as an ordinary prudent person would exercise in his own affairs of ordinary importance under like or similar circumstances.

"2. Contributory negligence is negligence of the plaintiff amounting to want of ordinary care on his part, which, concurring or co-operating with a negligent act of the defendant, is the proximate cause or occasion for the injury complained of.

"3. Where negligence on the part of the defendant is established, and the defense is contributory negligence, you are instructed that such defense is an affirmative defense, and must be established by a preponderance of the testimony.

"4. Assumption of risk is where a person knows, or by exercise of ordinary care should know, the risk to which he is exposed.

"5. You are instructed that under the law and the evidence in this case, the plaintiff was an employe of the defendant, and entitled to all the protection that the law gives to an employe, and in this connection you are instructed that the relation of master and servant existed, and that it was the duty of the master to furnish the employes a reasonably safe place to work, and this duty extends to going and coming from place of work on the premises or engines of the defendant, and you are therefore instructed that if you find and believe from the evidence in this case by a preponderance thereof that the plaintiff was injured while in the exercise of

ordinary care and prudence and that his injury was a result of the negligence of his employer in permitting the brakes of its engine and train to get out and remain out of repair, then your verdict should be for the plaintiff.

"6. You are instructed that, under the law of this state, an employer is responsible in damages for personal injury caused an employe who was himself in the exercise of due care and diligence at the time he was injured, by reason of any defect in the condition of the machinery or appliance connected with or used in the business of the employer, which arose or had not been discovered or remedied owing to the negligence of the employer, or of any person entrusted by the employer with the duty of inspection, repair, or seeing that the machinery or appliances were in proper condition.

"Therefore, if you find and believe from the evidence in this cause by a preponderance thereof, that the plaintiff was injured, by reason of any defect in the condition of the brakes on the engine or train testified about, and that said defect had arisen or had not been discovered or remedied by reason of the negligence of the defendant or its servants entrusted with the duty of repair, inspection, or of seeing that the machinery and appliances were in proper condition, and that the plaintiff was, at the time of his injury, in the exercise of due care and diligence, then your verdict should be for the plaintiff."

"7. You are further instructed in this case that if you find that the plaintiff was negligent and that such negligence of the plaintiff amounted to a want of ordinary care and diligence, contributing to bring about his injury, even though you should find that the defendant was negligent, then it would be your duty to return a verdict in favor of the defendant.

"8. You are instructed that if you find and believe from the evidence by a preponderance thereof; that the plaintiff by reason of the negligence of the defendant was placed in a position of peril, and that to save himself from anticipated injury, jumped and was thereby injured, then such jumping does not constitute contributory negligence, provided you find and believe he acted as an ordinarily prudent and careful man would have acted under similar circumstances.

"In this connection the court instructs you that persons under imminency of peril may not be required to exercise all of the presence of mind and care of a prudent and careful man out from under such danger."

Article 23 of the Constitution provides:

"Section 5. The Legislature shall pass laws to protect the health and safety of employes in factories, in mines and on railroads."

"Section 7. The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation.

"Section 8. Any provision of a contract, expressed or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void."

Revised Laws 1910, sec. 3776, provides:

"An employer shall be responsible in damages for personal injury caused to an employe who was himself in the exercise of due care and diligence at the time he was injured, by reason of any defect in the condition of the machinery or appliances connected with or used in the business of the employer which arose, or had not been discovered or remedied, owing to the negligence of the employer or of any person entrusted by him with the duty of inspection, repair or of seeing that the machinery or appliances were in proper condition."

Section 972, Rev. Laws 1910, provides:

"Those contracts are unlawful which are: First, contrary to an express provision; second, contrary to the policy of express law, though not expressly prohibited."

In 28 Cyc. 1094, it is said:

"A contract between master and servant before the happening of an injury, whereby the servant in consideration of the employment, or of the wages, agrees to release and discharge his master from liability on account of injuries caused by the negligence of his master or of the latter's servants, is void as against public policy, especially where such contracts are forbidden by statute or where the liability is of statutory origin."

In Labatt's Master and Servant, vol. 5, p. 6972, it is said:

"The doctrine supported by a great preponderance of American authority is that a contract by which a servant agrees to exempt his master absolutely for such injuries as may thereafter be caused by the negligence either of the master himself or of an employe whose negligence is imputed to him is invalid, as being contrary to public policy."

The contract in question, being such a contract as is forbidden by the Constitution and statutes of this state, is, therefore, void as against public policy. The same was not a defense to the plaintiff's cause of action, and the trial court properly excluded it.

The remaining assignments of the defendant go to the questions of giving instructions to the jury and rulings of the trial court excluding testimony. We, on examination of the record, find that there is no merit in the contentions made, and the judgment of the trial court is affirmed.

OWEN, C. J., and KANE, PITCHFORD, and McNEILL, JJ., concur.