**PRODUCERS' & REFINERS' CORPORATION v. CASTILE, Adm'x.**

No. 13262—Opinion Filed Feb. 6, 1923.

Rehearing Denied April 3, 1923.

Second Rehearing Denied May 8, 1923.

(Syllabus.)

1. **Master and Servant — Negligence of Master—Fellow Servant Doctrine.**

The hiring or retention of a servant whose unfitness for his duties, whether it arises from his want of skill, his physical and mental qualities, or his bad habits, is known, actually or constructively, to the master, is culpable negligence, for which the master must respond in damages to any other servant who may suffer injury thereby.

2. **Same.**

The doctrine that a servant cannot maintain an action for injuries caused by the negligence of a coservant has always been conceded to be subject to an exception in cases where negligence on the master's part in employing or retaining in his employ the delinquent coservant is shown.

3. **Same.**

In an action for damages for personal injuries, the question whether the defendant's negligence was the proximate cause of the injury should be left to the jury where the evidence is conflicting; or where, although the evidence is not conflicting, men of ordinary intelligence might differ as to the effect of such issue.

4. **Same—Question of Fact.**

Whenever the evidence suggests that the injury may have been caused by the combined operation of the negligence of the master and of a coemploye, the proper course is to submit the question of the master's liability to the jury under proper instructions.

5. **Same—Duty of Master—Care—Safety of Employe.**

The master is bound to exercise reasonable care and diligence to provide a reasonably safe place in which the employe or servant is to work, and also reasonably safe machinery, tools, and appliances with which to work. And where the master engages to convey the servant back and forth from his home to his work, to supply the servant with a reasonably safe means of conveyance.

6. **Same.**

Where the service in which the servant is to be employed is such as to endanger the lives of persons and coemployes, the master, before engaging such servant, is required to make reasonable investigation into his character, skill and habits of life, and he is also bound to institute affirmative inquiries in order to ascertain the qualifications of a servant whom he transfers to a more responsible position for which special qualifications are necessary, unless the servant has given proof of his capacity in some similar position.

7. **Trial—Sufficiency of Instructions.**

If the instructions given by the court, taken together and considered as a whole, fairly present the law of the case, and there is no material conflict between the different paragraphs thereof, this will be sufficient.

8. **Same—Refusal to Give All Instructions Requested.**

It is also well settled that where the court instructs the jury clearly, fairly, and fully upon all phases of the case, it is not error

to refuse to give any and all requested instructions.

### 9. Appeal and Error—Harmless Error—Argument of Counsel.

In order for misconduct of counsel in argument to the jury to effect a reversal of the judgment, it must appear that substantial prejudice resulted therefrom, and that the jury were influenced thereby to the material detriment of the party complaining.

### 10. Same—Witnesses — Nonattendance for Legal Cause.

Where the trial court allows a deposition to be admitted in evidence, this court, in the absence of any showing to the contrary, will assume that, as required by section 5087, Rev. Laws 1910, it was shown to the satisfaction of the trial court in some proper manner for some legal cause the attendance of the witness could not be procured.

### 11. Death—Damages—Limitations.

All limitations upon the amount of recovery for injuries resulting in death are prohibited by art. 23, sec. 7, Williams' Constitution, which provides: "That right of action to recover damages for injuries resulting in death shall never be abrogated and the amount recoverable shall not be subject to any statutory limitation."

### 12. Master and Servant—Trial—Argument of Counsel—Damages—Harmless Errors.

Record examined, and held: (1) That the evidence reasonably supports the verdict of the jury; (2) that the instructions given by the court are substantially correct and clearly, fairly and fully advise the jury upon all the phases of the case; (3) that it does not appear that any substantial prejudice to the defendant resulted from the misconduct of counsel complained of; (4) that the amount of recovery allowed, while liberal, is not excessive; that it is well supported by the evidence, and it does not appear that it was induced by bias or prejudice on the part of the jury; (5) that the remaining errors complained of are without merit or are harmless under section 6005, Rev. Laws 1910.

Error from District Court, Oklahoma County; James I. Phelps, Judge.

Action for damages for death of E. L. Castile brought by Dona M. Castile, Adm'x. against the Producers' & Refiners' Corporation. Verdict for plaintiff, and defendant appeals. Affirmed.

W. J. Campbell and Humphrey & Campbell, for plaintiff in error.

Robinett & Ford, for defendant in error.

KANE, J. This was an action for damages for personal injuries resulting in death commenced by Dona M. Castile, administratrix of the estate of E. L. Castile, deceased

as plaintiff, against the Producers' & Refiners' Corporation, as defendant. Hereafter for convenience the parties will be designated plaintiff and defendant, respectively, as they appeared in the trial court.

It appears that the deceased was at the time of his injury in the employ of the defendant as a construction carpenter and was working on one of its leases near Kelly Station about six miles southwest of Beggs, and resided at that time about half way between Beggs and the lease where he was working.

The plaintiff alleges in her petition, and the allegations seem to be conceded, that for a long period of time prior to the injury of the deceased, it had been the habit and custom of the defendant to operate a freight and passenger conveyance for the purpose of hauling materials and supplies from Beggs to its oil leases and to haul various employes from the town of Beggs to its oil leases and also to haul various employes who lived along the road traveled by the said truck from their homes to their work, and to haul such employes back to their homes in the evening from the oil leases, and to haul such employes and their tools, materials, and supplies from one lease to another, whenever the occasion demanded. It is also alleged that the deceased had been employed by defendant for a period of four or five days prior to the injuries from which he died; and as a part of the verbal contract of hiring, the defendant agreed to transport and haul deceased from his home in the morning and from the place where he was working to his home in the evening, and that prior to the date of his injury the defendant had so hauled the deceased from his home to his work and from his work to his home on two or three different occasions, using the same Ford truck for that purpose. The manner of the injury is stated in the petition substantially as follows: That in pursuance of said contract the deceased on the day of his injury, at the invitation and direction of the driver of said truck, took his position upon the bed thereof immediately back of the seat and was attempting to place his tools thereon in such a position that the same would not fall from the bed of said truck as it proceeded toward the town of Beggs, and that while so doing the driver of the truck, who was late and in a hurry to get started on his return trip, suddenly, without any notice or warning whatever of his intention so to do, and without advising and warning the deceased to secure a safe place on the bed of said truck, as it

was his duty to do, and without ascertaining whether or not the deceased was in a safe position on the bed of the said truck, as it was likewise his duty so to do, caused the said truck to be violently and suddenly lurched and jerked forward over the rough and uneven roadway at said point, which acts on the part of the driver of the said truck in suddenly starting said truck caused the materials and supplies on the back end thereof, particularly a short handled maul or sledge, to be shifted to such a position that the handle of the said short handled sledge or maul pointed toward the front end of the said truck and in an inclined position and about the time the said handle of the said maul or sledge shifted to such position and on account of the manner in which the driver handled the said truck, the body of the deceased was violently thrown against the end of the handle of the maul or sledge, which at that time was rough, uneven, splintered and jagged and as a direct result thereof the deceased received painful and serious injuries both internally and externally from which he thereafter died.

The principal acts of negligence charged against the defendant may be summarized as follows: (1) That the driver of the truck was wholly inexperienced in that line of work and the defendant was negligent in not making reasonable investigation into his character, skill and habits of life before employing him; (2) that it was the duty of the defendant to supply the deceased with reasonably safe means of conveyance; and that it negligently violated this duty in that the truck furnished was not a reasonably safe means of conveyance for the deceased and other employes to ride upon, because the same was not only in an old, worn and defective condition, but it was inadequate in that it was a one-ton Ford truck with a freight body without any springs, such as are usual and customary for passenger conveyances, and the defendant failed and neglected to maintain on the bed of said truck seats for the safety and convenience of its employes and failed and neglected to provide and maintain on the bed of said truck banisters, railings or sideboards, or other means whereby persons riding thereon could hold on and could be prevented from falling from the bed of said truck, or on the bed thereof, in the event of a sudden or other unusual movement of said truck.

The answer of the defendant, after a general denial, undertook to state in detail the precise manner of the injury, which agrees in many details with the statement of facts contained in the petition, the principal point of difference between the two statements being shown by the following brief summary of this part of the answer: That after the deceased had been admonished by one of his fellow workmen and passengers that he had better sit down, he replied, "I always stand up, let's go"; that the truck was immediately started forward without any unusual jerking or lurching; that while so standing upon the floor of the truck immediately back of the seat, leaning forward with his hands upon the end and edge of a nail keg, the deceased in some manner unknown to the defendant, lost his balance and footing upon the floor of the truck, and in an effort to regain his balance and to prevent himself from falling, stepped quickly back and his foot was placed by him upon the sledge end of the said hammer in such a way as to cause the handle of the said sledge to tilt upward and, while the same was in such position, the deceased was thrown against the handle end of the said sledge, which was the result of an effort by the deceased to prevent himself from falling, and to regain his balance and footing upon the truck, and the partial weight of the body of the deceased came in contact with the uptilted handle of the sledge hammer at a time when his foot was placed upon the sledge thereof, and that the handle end of the sledge hammer came in contact with the person of the deceased in such a way as to cause the same to enter and protrude into the body of the deceased, thereby and in that manner inflicting injuries to the deceased, complained of by the plaintiff. The defendant also, as a further defense, pleaded assumption of risk and contributory negligence on the part of the deceased. The only reply was a general denial.

Upon trial to the jury of the issues thus joined there was verdict in favor of plaintiff in the sum of $30,000, upon which judgment was duly rendered, to reverse which this proceeding in error was commenced.

In their very complete and able brief, counsel for the defendant discuss their numerous assignments of error under two general propositions as follows:

(1) There is no liability against the master on account of the acts to the servant complained of herein under the record.

(2) The judgment is erroneous under the record on account of (a) improper admission or rejection of evidence, (b) misdirection of the jury or refusal to direct as requested by the losing party, and (c) errors

in procedure, by reason of which the trial resulted in a miscarriage of justice and each of which constituted a substantial violation of a constitutional or statutory right.

If we correctly understand counsel's contention under his first assignment of error it may be briefly summarized as follows: Inasmuch as it is conclusively shown by the pleadings and conceded by counsel for the plaintiff that the deceased at the time of his injury was in the employ of the defendant as a servant, being then engaged in doing that which was incidental to his employment, it follows as a matter of course that the deceased and the driver of the truck were fellow servants, and therefore the plaintiff is not entitled to recover in the case because it conclusively appears that the injury from which the deceased died was inflicted by a fellow servant.

We do not understand this to be the law. Even if we concede that the deceased and the driver of the truck were fellow servants, we are unable to agree with the conclusion reached by counsel that this premise being granted the fellow-servant doctrine inevitably applies to the case at bar. Referring to the allegations of the petition hereinbefore summarized, it will be seen that the two principal acts of negligence alleged to have been committed by the master are: (1) Failure to supply the servant with reasonably safe means of conveyance; (2) failure to make reasonable investigation into the character, skill, and habits of life of the driver of the truck.

It seems to be well settled that the hiring or retention of a servant whose unfitness for his duties, whether it arises from his want of skill, his physical and mental qualities, or his bad habits, is known, actually or constructively, to the master, is culpable negligence, for which the master must respond in damages to any other servant who may suffer injury through that unfitness.

The essential ground upon which the liability thus predicated is based is that, "the master impliedly contracts that he will use due care in engaging the services of those who are reasonably fit and competent for the performance of their respective duties in the common service." 3 Labatt's Master & Servant, section 1079.

This rule, it is held, furnishes an exception to the doctrine which declares a master to be exempt from responsibility for injuries caused to one servant by the negligence of another. This for the reason that the wrongful hiring of incompetent servants is not one of the common and obvious hazards of the employment which is assumed by other servants. 3 Labatt's Master & Servant, section 1080.

The same author in another place (4 Labatt's Master & Servant, section 1403) states the rule as follows:

"The doctrine that a servant cannot maintain an action for injuries caused by the negligence of a coservant has always been conceded to be subject to an exception in cases where negligence on the master's part in employing or retaining in his employ the delinquent coservant is shown."

Thus it appears that while generally the master is not responsible to one employe for an injury resulting from the negligence or incompetence of a coemploye in the same general employment. he is liable in such a case where he is guilty of negligence in the employment of the negligent or incompetent employe, who thereby produces the injury. The application of this principle to cases like the case at bar, where the service in which the servant is to be employed is such as to endanger the lives of fellow servants, will be more fully discussed in another part of this opinion.

That it is the duty of the master to furnish a servant a reasonably safe means of conveyance where he engages to convey him back and forth from his home to his work is held in Pine Belt Lumber Co. v. Riggs, 80 Okla. 28, 193 Pac. 990.

This ruling is based on the principle that in the circumstances stated, the vehicle becomes one of the instrumentalities furnished for a more efficient performance of the servants' duties, and in furnishing it the master is carrying out his contract just as if furnishing any other piece of machinery for the same purpose.

Having reached the conclusion that the fellow-servant doctrine is not available as a defense, both of the allegations of negligence set forth in the petition being based upon failure of the master to perform non-delegable duties, it follows that if there was any evidence reasonably tending to show negligence, and that defendant's failure to perform these duties or either of them was the proximate cause of the injury, then the plaintiff was entitled to have her right to recover presented to the jury on the merits. On this point it is sufficient to say that we have examined the record carefully and are satisfied that the evidence reasonably tends to show negligence on the part of the defendant in the two respects alleged in plaintiff's petition.

It is well settled that in an action for damages for personal injuries the question

whether the defendant's negligence was the proximate cause of the injury should be left to the jury, where the evidence is conflicting or where, although the evidence is not conflicting, men of ordinary intelligence might differ as to the effect of such issue. Moreover, in the case at bar, we have held there was evidence reasonably tending to show that the master was negligent in failing to perform two nondelegable duties, from either or both of which acts of omission the precise injury complained of might reasonably be expected to occur. In these circumstances, even if the delinquency of a fellow servant concurred, causing the injury, the plaintiff still would be entitled to go to the jury.

It is well settled that whenever the evidence suggests that the injury may have been caused by the combined operation of the negligence of the master and of a coemploye, the proper course is to submit the question of the master's liability to the jury under proper instructions. Stringham v. Stewart, 100 N. Y. 516, 3 N. E. 575.

Before examining the remaining errors complained of under this subhead, which all belong to the class covered by section 6005, Rev. Laws 1910, and do not constitute reversible error unless they result in a miscarriage of justice or constitute a substantial violation of a constitutional or statutory right, we will notice the contention of counsel for the plaintiff in regard to the controlling character of two cases formerly decided by this court. These cases are Pine Belt Lumber Company v. Riggs, 80 Okla. 28, 193 Pac. 990, and Ardmore Oil & Milling Co. v. Robinson, 29 Okla. 79, 116 Pac. 191.

Counsel say that in preparing their case for trial they were guided by these two decisions of this court, and that the trial court followed them implicitly in the matter of instructing the jury and ruling upon the admission and rejection of testimony. Counsel for defendant do not deny that the trial court followed these two cases, but seek to distinguish them from the case at bar in several particulars. We have examined the cases with considerable care and are convinced that, taken together, they are in point and correctly state the principles applicable to the case at bar.

In the first case, where the plaintiff was injured by failure of the master to furnish reasonably safe means of conveyance, the duty of the master who engages to convey his servant from his home to his work is laid down as follows:

"The master is bound to exercise reasonable care and diligence to provide a reason-ably safe place in which the employe or servant is to work, and also reasonably safe machinery, tools and appliances with which to work. And where the master engages to convey the servant back and forth from his home to his work, to supply the servant with a reasonably safe means of conveyance."

In the second case, as in the case at bar, the service in which the servant was employed was such as to endanger the lives of other employes. The master was charged with negligence in failing to make reasonable investigation into the character, skill, and habits of life of the servant inflicting the injury before transferring him to a more responsible position where special qualifications were necessary. It was held:

"Where the service in which the servant is to be employed is such as to endanger the lives of persons and coemployes, the master, before engaging such servant, is required to make reasonable investigation into his character, skill and habits of life, and he is also bound to institute affirmative inquiries in order to ascertain the qualifications of a servant whom he transfers to a more responsible position for which special qualifications are necessary, unless the servant has given proof of his capacity in some similar position."

Counsel for defendant say in their brief that the negligence alleged in the petition herein is different from the negligence charged in the case of Ardmore Oil & Milling Co. v. Robinson, supra, but after careful consideration of the point made we are unable to perceive any difference in principle in this respect between the two cases.

It is true, as pointed out by counsel, that in the latter case the fellow-servant doctrine was not discussed. But inasmuch as we have held that the doctrine that a servant cannot maintain an action for injury caused by the negligence of a coservant is subject to an exception in cases where there is negligence on the master's part in employing or retaining in his employ the delinquent coservant, this distinction makes no difference in the conclusion to be reached.

Viewing the instructions given by the court in the light of these two cases, we are of the opinion that they are substantially correct and cover the legal phases of the case with reasonable fullness.

It is well settled that if the instructions given by the court, taken together and considered as a whole, fairly present the law of the case, and there is no material conflict between the different paragraphs thereof, this will be sufficient. It is also well settled that where the court instructs the jury clearly, fairly, and fully upon all phases of

the case, it is not error to refuse to give any and all requested instructions. Chickasaw Compress Co. v. Bow, 47 Okla. 576, 149 Pac. 1166; Chicago, R. I. & P. Ry. Co. v. Johnson, 71 Oklahoma, 175 Pac. 494; Slick Oil Co. v. Coffey et al., 72 Oklahoma, 177 Pac. 915; Citizens' Bank of Headrick v. Citizens' State Bank of Altus et al., 75 Okla. 225, 182 Pac. 657; Muskogee Electric Traction Co. v. Jackson, 88 Okla. 184, 212 Pac. 416.

In regard to the instructions requested by the defendant and refused by the court, we may add that many of them are based upon the erroneous assumption that the defendant was entitled to the benefit of the fellow-servant doctrine as a defense and were properly refused on this ground. And that others, while probably correct as abstract propositions of law, were either covered by the instructions given by the court or constituted nice refinements of applicable principles of law, which in no way could be helpful to the jury.

The objections that the evidence upon the ground of negligence was insufficient because it does not show the servant was incompetent seems to us to be without merit.

On this point, Mr. Possey, the defendant's superintendent, testified substantially as follows: Ray Hall, who was the regular truck driver, left the service of the company about the first day of July, and he took Neil Franks out of the laboring gang and had him drive the truck until about the 22nd of July. On this latter date he took Reeves Alston out of the laboring gang and had him drive the truck for about three days or until the accident occurred. That he did not make any independent investigation to ascertain if Alston was a competent truck driver other than he knew that he was a competent man in general; that he had never seen him drive a truck and did not even ask him if he was a competent truck driver; that he did not give him any instructions at all about driving the truck or tell him to be careful as he ordinarily would have done.

There was testimony of competent witnesses tending to show the amount of experience that Reeves Alston had as a truck driver and to the effect that this experience, coupled with the fact that for the last year or so Alston had been continuously engaged in other employments than truck driving, was not sufficient to make a competent truck driver, where the lives or safety of other employes were entrusted to his care.

We think this and other testimony to the same effect was sufficient to take the case to the jury, not only on the question of the competency of the driver, but on the question whether the master was negligent in not instituting affirmative inquiries in order to ascertain the qualifications of the driver before transferring him to a more responsible position.

Whether an employer has made reasonable investigation into the character, skill, and qualifications of a servant is a question of fact for the jury. Ardmore Oil & Milling Co. v. Robinson, supra.

Under the subhead, "Improper Admission or Rejection of Evidence," counsel for defendant contend that the deposition of Neil Franks was improperly introduced in evidence for the reason that certain provisions of sections 5073 and 5087, Revised Laws 1910, were not complied with in that there was no proof that the witness, Neil Franks, did not reside in Oklahoma county at the time of the trial. In support of this counsel say the preliminary proof offered was not sufficient to comply with that part of section 5087, Rev. Laws 1910, which provides that when a deposition is offered in evidence it must appear to the satisfaction of the court that for some legal cause the attendance of the witness cannot be procured. In an effort to comply with this section of the statute, Roy Ford, counsel for plaintiff, took the witness stand and identified a letter written by him October 19, 1921, to Neil Franks at Farmersville, Ill., requesting his presence at the trial of this case and offering to pay his expenses while attending the trial; he said he had seen Mr. Franks in St. Louis a few weeks before and Franks had told him he was awful busy on the farm, and if he possibly could he would get away. The two sections referred to by counsel provide, respectively, as follows:

Section 5073. "The deposition of any witness may be used only in the following cases: First, when the witness does not reside in the county where the action or proceeding is pending, or is sent for trial by change of venue, or is absent therefrom. Second, when from age, infirmity or imprisonment the witness is unable to attend court or is dead. Third, when the testimony is required upon a motion, or in any other case where the oral testimony of the witness is not required."

Section 5087. "When a deposition is offered to be read in evidence, it must appear to the satisfaction of the court that, for some legal cause, the attendance of the witness cannot be procured."

It will be observed that section 5087 provides that it must appear to the satisfaction of the trial court that for some legal cause the attendance of the witness cannot be procured. Of course we must assume that the trial court was satisfied on that point, either from the evidence adverted to, or from some other source, and we are unable to perceive any good reason why this court should disturb his action in this matter, in the absence of any showing that he acted arbitrarily.

Of the remaining errors of this class complained of, it is sufficient to say that we have examined the record carefully and find that they are either without merit or that they are harmless under section 6005, Rev. Laws 1910.

Under the subhead, "Errors in Procedure," counsel for defendant challenge the action of the trial court in refusing to direct the jury not to consider certain statements made by counsel for plaintiff in his closing argument to the jury, which statements are respectively as follows: "Those witnesses from Beggs do not work for this company; and they will not be fired if they tell what happened," "I have done all I can for that little woman and her child and from now you have to make the fight."

Both of these remarks were highly improper and the trial court should have admonished the jury as requested. But in order for misconduct of counsel in argument to the jury to effect a reversal of the judgment, it must appear that substantial prejudice resulted therefrom, and that the jury were influenced thereby to the material detriment of the party complaining. Oklahoma Ry. Co. v. Christenson, 47 Okla. 132, 148 Pac. 94; Ditzler Dry Goods Co. v. Sanders, 44 Okla. 678, 146 Pac. 17; Hooker et al. v. Wilson, 69 Oklahoma, 169 Pac. 1097.

A close analysis of the pleadings and the evidence discloses very few conflicts between the testimony of any of the witnesses. As we view it, the only serious issue of fact joined by the pleadings, as indicated by the excerpts from the petition and the answer, respectively, hereinbefore set out, was as to the precise manner the injury occurred. But as on that point the plaintiff introduced in evidence the defendant's answer and we are of the opinion that even if it be assumed that the evidence shows that the accident occurred as therein alleged, it was still a proper case for the jury under the rule hereinbefore announced. In these circumstances the jury having settled the right to recovery in favor of the plaintiff, as will hereinafter more fully appear, we think that the amount of recovery allowed is well within the evidence on that point.

The next and last assignment of error charges that the amount of the verdict, to wit, $30,000, was and is excessive, and that such amount was fixed by the jury under the influence of passion and prejudice. While the amount of recovery is liberal, we cannot say from the evidence that it is too large or that it was influenced by bias or prejudice on the part of the jury.

The evidence shows that under the mortality table introduced in evidence, the deceased had a life expectancy of 31.07 years. The plaintiff, who was the wife of the deceased, testified, in substance, that her husband was 36 years of age, and was a big, strong, healthy man and his health was almost perfect; that he was a graduate of A. & M. College, was an expert carpenter, and at the time he was killed was making $375 to $390 per month, the greater portion of which he contributed to the support of his wife and child; that he was an expert contractor and carpenter and was taking an architectural course in the International Correspondence School, which he had practically finished at the time of his death; that it was his purpose and intention to be an architect and contractor and plan buildings so that he would not have to work at hard labor, as he thought he could use his mind to a better advantage than his main strength; that he was ambitious, economical, and a perfect husband; that he not only supported his wife and family in comfort, but he helped a brother and sister through school. Other witnesses testified to the same effect, and Possey, the superintendent of the defendant company, wound up his testimony with the statement that "the deceased was as good a fellow as ever lived."

While this court, so far as I recall, has never allowed a verdict for this amount to stand in cases of injury resulting in death, still we think this is an exceptionally strong case, and we are unable to say the verdict is too large, or that it was influenced by passion and prejudice on the part of the jury.

In this jurisdiction all limitations on the amount of recovery in such cases are prohibited by article 23, sec. 7, Wms.' Const., which provides:

"The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation."

In these circumstances we have no right to place limitations upon the amount returned by the jury unless we are convinced that the amount of recovery bears no relation whatever to the evidence, or that it was induced by bias or prejudice on the part of the jury.

In this case, as we have said, the amount of recovery is unusually well supported by the evidence, and finding no evidence of bias or prejudice on the part of the jury, we are not at liberty to disturb it.

The case on the whole was ably tried by counsel for both parties and carefully considered by the court below and fully and ably briefed and argued in this court. From the whole record we are convinced that the parties have had a fair and impartial trial on the merits, and that no reversible error was committed that will justify a reversal of the judgment of the trial court.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, V. C. J., and KENNAMER, NICHOLSON, and BRANSON, JJ., concur.