**RITER-CONLEY MFG. CO. v. O'DONNELL.**

No. 7823—Opinion Filed July 31, 1917.

Concurring Opinion Aug. 8, 1917.

(168 Pac. 49.)

(Syllabus by the Court.)

1. **Removal of Causes — Grounds — Residence.**

An action brought in a state court outside of the federal court district in which the plaintiff resides is not on objection by the plaintiff removable to the federal court on the petition of defendant, where he is a resident of another state.

2. **Master and Servant—Safe Place for Work—"Vice Principal"—Evidence.**

(a) To the general rule that the master must use ordinary care to provide a reasonably safe place for the servant to work, there is an exception or qualification, to the effect that the master will not be held liable for injuries resulting by reason of transitory dangerous conditions which arise and change the character of the place of work during the progress of the work in which the employes are engaged; but this exception applies only where the very progress of the work causes the conditions surrounding the place of work to change—where the change is temporary, transitory, and is due and incidental to the progress of the work being done and not to cases where the danger could have been entirely obviated by the exercise of ordinary care.

(b) In determining whether an act of a servant is that of a vice principal or a fellow servant, the rank of the one performing the act is not to be considered, but the nature of the service. For a servant who is intrusted with the performance of some absolute and personal duty of the master is a vice principal, regardless of his rank, and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the act or was guilty of the negligence.

3. **Same—"Tools" or "Appliances"—Defective Materials.**

Defective materials furnished by the master to be used in the prosecution of the work, such as boards with nails in them, are neither tools nor appliances.

4. **Master and Servant—Assumption of Risk—Master's Negligence—Safe Place to Work.**

(a) In accepting employment, a servant assumes the ordinary risks of his employment which are known to him, or which by the exercise of ordinary care he could have known, but does not assume risks not naturally incident to his employment, but which arise out of the failure of the master to exercise due care in the performance of some duty owing by the master to the servant, unless the negligence of the master and the

risks arising therefrom are so apparent and obvious that an ordinarily prudent person would observe the one and appreciate the other.

(b) It is not only the duty of the master to use ordinary diligence to furnish the servant a reasonably safe place in which to work, but also to use reasonable diligence to maintain the place in such condition. The duty is a continuing one, and it was not error for the court to so instruct the jury.

Sharp, C. J., and Turner, Owen, and Miley, JJ., dissenting.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Suit by Edward O'Donnell against the Riter-Conley Manufacturing Company for damages for personal injuries. Judgment for plaintiff, and defendant brings error. Affirmed.

Randolph, Haver & Shirk and Keaton. Wells & Johnston, for plaintiff in error.

J. S. Ross and L. D. Threlkeld, for defendant in error.

BRETT, J. The defendant in error, Edward O'Donnell, as plaintiff in the district court, sued the plaintiff in error, Riter-Conley Manufacturing Company, as defendant in that court, to recover damages for personal injuries. The parties will be referred to as they appeared in the district court.

The petition of the plaintiff substantially states that on November 14, 1914, plaintiff was in the employ of defendant as a rivet heater, and had been for some time prior thereto; that on that day he, together with the remainder of his crew, which consisted of some 20 or 30 others in charge of a foreman whose duty it was to direct them what to do concerning the building of a circular steel oil tank near Yale, in obedience to his orders, was engaged in carrying saw horses or wooden tressels to a place prepared by defendant for erecting the tank and placing them there; that after placing the horses, it was his duty to, and he did, put mudsills under the ends of each to keep the horses from sinking into the soft earth; that the mudsills consisted of short pieces of boards, 1x4's, 2x4's, and 2x6's, furnished by defendant for that purpose; that in each of these boards, which were scattered over the working place, were nails which protruded, and that while so employed, without negligence on his part, he stepped upon the point of a nail so protruding and was seriously injured; that his injury was caused by the negligence of defendant in failing to exercise ordinary care to furnish him a reasonably safe place in which to work, and to exercise ordinary

care in furnishing him with reasonably safe appliances and material with which to work, to his damage in a sum certain. After a demurrer to the petition had been overruled, defendant answered, in effect a general denial, but admitted that it was a foreign corporation. It also pleaded contributory negligence, assumption of risk, and that the negligence, if any, complained of was that of a fellow servant. There was trial to a jury and judgment for plaintiff for $3,800, and defendant brings the case here.

There is no dispute as to the facts. On this point the evidence discloses that defendant, on the day of the injury, was engaged in erecting oil tanks in a certain field located some mile and a half south of Yale. Plaintiff was a boiler maker by trade, of some 30 years' standing, and was, at that time, in the employ of defendant as a rivet heater and had been for some time. These tanks were about 114 feet in diameter, and were built in a row, perhaps 30 or 40 feet apart, and were numbered 1, 2, 3, 4, etc. In preparing for the erection of a tank, one crew of defendant's employes would precede the others and level off a huge circular spot of land upon which to construct it, and in so doing would pile the dirt scraped off some 40 feet away, but around the circumference of the circle. The level land is called the grade, and the pile of dirt the "fire bank," and in this instance was four or five feet high. When the ground is thus prepared, that crew moves on and repeats the work for tank No. 2, 3, 4, etc. Then come other crews and bring material consisting, among other things, of large steel sheets of which to make the bottom of the tank, also a number of 2x8's, 16 feet long, and material to saw into 1x6's, three feet long, with which to make carpenters' horses; the 1x6's being used to make legs for the horse; the lumber used, when starting in on the first tank, being new and without nails. The horses, when made, are placed on the spot prepared in such a way as to support the bottom of the tank during the making, and which, when made, is supported by blocks placed around its outer edge. The horses are then knocked from under, by removing a leg from each end, and taken away to be used in the same way in building tank No. 2, 3, 4, and so on. The bottom is lowered to the ground by jacks. It takes six crews of five men each to build the bottom; they are called the bottom gang. It takes six more crews of a like number of men to build the superstructure; they are called the shell gang. Teamsters employed by defendant haul and place the material on the ground, and the used lumber from tank

to tank is utilized as the work progresses. At the time of the injury complained of tanks Nos. 1, 2, and 3 had been finished, and tank No. 4 nearly so, when, the teamsters having hauled and placed the used lumber on the ground taken from that tank, plaintiff, and perhaps all the bottom gang, was ordered by the foreman to go to work placing the horses for tank No. 5. It takes 120 horses to hold the bottom up, and, as some 240 legs had been knocked off, all this material had been scattered over the bank and grade by the teamsters; the legs knocked off having driven in and through one end a number of tenpenny nails, which protruded to such a length as to be dangerous to step on. Other legs had also been brought from tank No. 3 some five or six days before, and these were also scattered over the same ground, and, at the time of the injury, some of them were covered from sight with sand shifted by the winds. Those of the legs which could not be used again for that purpose were intended for use as mudsills, and as such were placed crosswise on the ground for the legs to rest on, so that the horse would not sink into the ground when burdened with the weight of the bottom. This was the condition of the working place when plaintiff and others of his crew were ordered to place the horses on the tank site, which they proceeded to do; plaintiff and a fellow workman carrying between them, from the bank to the grade where they were set, a horse at a time, with an end upon the shoulder of each. It was on one of these trips that plaintiff, in walking down the bank in advance of his fellow workman, carrying a horse, stepped upon the point of a rusty nail protruding through a mudsill concealed in the sand, which penetrated his foot and produced a serious and permanent injury.

1. The defendant attempted to remove the cause from the district court of Oklahoma county to the United States District Court. And its first assignment of error complains of the refusal of the district court of Oklahoma county to permit this removal. But since the suit was brought within the boundaries of the Western federal judicial district of the state of Oklahoma, and the uncontroverted allegations of the petition are that plaintiff was, at that time, a "resident, inhabitant, and citizen of the Eastern federal district of the state of Oklahoma," at Tulsa, and the defendant "a corporation duly organized, created, and existing under and by virtue of the corporate laws of the state of New Jersey, and is authorized to transact and carry on business within and throughout the state of Oklahoma, and is actually

engaged in the business of constructing and erecting steel oil tanks within Payne and other counties in the said state of Oklahoma and was so engaged," at the time of the alleged injury, the court did right, when the plaintiff objected to the removal, in overruling defendant's petition for the removal of the cause to the United States District Court. St. L. & S. F. R. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60.

2. The second and third assignments of error, which will be treated together, attack the sufficiency of the petition and the sufficiency of the evidence to establish the defendant's liability. It is ably contended by counsel for the defendant that neither the petition nor the evidence shows that the defendant failed to exercise ordinary care to furnish the plaintiff a reasonably safe place in which to work, or reasonably safe tools, material, and appliances with which to perform the work. But with this contention we cannot agree.

(a) The defendant insists that under the facts pleaded and proved in this case, if the place at which plaintiff was working at the time he received his injuries was unsafe, the condition was one temporary and transitory, and that it was rendered unsafe by the plaintiff's fellow servants, and not by any fault or negligence of the defendant, and cites authorities to the effect that the master is not liable for injuries resulting by reason of transitory dangerous conditions which arise and change the condition of the place of work during the progress of the work in which the employes are engaged. This is undoubtedly a sound, just, and correct rule of law, thoroughly established. But to our mind, there is a marked distinction between the facts in the case at bar and the facts to which this rule of law is applicable. This rule excuses the master only where the very progress of the work causes the conditions surrounding the place of the work to change—where the change is temporary, transitory, and is due and incidental to the progress of the work, and cannot be said to apply to the facts in the case at bar. Here the plaintiff and his associate workmen, called the "bottom gang," were directed to begin work on a separate and distinct tank (No. 5), which was 30 or 40 feet from where they had worked or where any one else was at work at the time. And the condition which resulted in the injury did not arise during the progress of their work, but was a condition that existed at and prior to the time they were directed to begin work upon this tank. The nail upon which plaintiff stepped was not dropped there during the progress of his work on the bottom of this tank; its presence there was not due nor incidental to the progress of the work of building the bottom of the tank, but the board containing it, together with more than 200 other boards containing nails, had by direction of the master been scattered there five or six days before—so long that the sands shifted by the wind had covered this one and others, completely hiding them from view. Then it cannot be said that this was a mere transitory peril, incident to and occasioned by the execution of the work. And it cannot be said under this state of facts, as shown by the evidence, that there was no evidence reasonably tending to show that the defendant was guilty of negligence.

There are some dangers which ordinary care on the part of the master cannot remove, and for which the law does not hold him liable; but the law does not excuse him from liability for injuries due solely to dangers which the exercise of ordinary care would have removed. Labatt on Master and Servant, p. 2475. In Barnett & Record Co. v. Schlapka, 208 Ill. 426, 70 N. E. 343, it is held that:

"The exception to the general rule as to the duty of the master to use ordinary care to provide a reasonably safe place to work, made where the character of the work is such that the relative safety of employes necessarily varies from time to time as the work progresses, and the work being done at times renders the place dangerous, applies only where the work being done necessarily renders the place dangerous, and not to a case where the danger could have been entirely obviated at a slight expense."

And in Casey v. Kelly-Atkinson Const. Co., 240 Ill. 416, 88 N. E. 982, the court says:

"Counsel say that the conditions in the construction of the bridge were changing, from time to time, in the prosecution of the work, and for that reason the law did not impose any duty upon the defendant to keep the place of Miller's employment reasonably safe. There is a rule of that kind, but it has no relation to this case, for the reason that the accident did not result from changing conditions in the prosecution of the work which made the place unsafe."

To the same effect is Bird v. Utica Gold Mining Co. et al., 2 Cal. App. 674, 84 Pac. 256. And the very language of the exception itself limits its application to cases only where the work being done at the time changes the conditions and necessarily renders the place temporarily unsafe. Hence it does not apply to the facts in the case at bar.

(b) But it is further insisted that the condition which existed at the time the plaintiff

was injured and which rendered the place unsafe was due to the act of the teamsters, plaintiff's fellow servants, who placed the boards with nails in them upon the embankment, and not to any negligence or fault of the defendant. And counsel cite cases which they think support this contention, all of which we have carefully examined, but are unable to see that these cases, or the doctrine of fellow servant, have any application to the facts in the case at bar. The teamsters who scattered these 240 boards with nails in them over this embankment did exactly what the master had directed them to do. They did not do this of their own volition, but under directions. And it was therefore not their act, but the act of the master. It is not claimed that they were directed by the master to bend or remove the nails before scattering the boards, and negligently performed that duty; but they did what their employment and directions contemplated should be done. And besides, in determining whether an act of a servant is that of a vice principal or a fellow servant, the rank of the one performing the act is not to be considered, but the nature of the service. In Pasco v. Minneapolis Steel & Machine Co., 105 Minn. 132, 117 N. W. 479, 18 L. R. A. (N. S) 153, it is held that:

"The test by which to determine whether a servant was acting as a 'vice principal' or as a 'fellow servant' is whether at the time of the injury he was intrusted with the performance of some absolute and personal duty of the master Not the rank nor authority, but the nature of the service, controls."

And it is the general rule and has been repeatedly held by this court:

"That it is the duty of the master to furnish the servant or employe a reasonably safe place in which to work, reasonably safe appliances with which to work, reasonably safe materials, and reasonably competent fellow servants to work with; and this duty cannot be delegated by him so as to relieve him of liability for injuries resulting from its violation." Choctaw Electric Co. v. Clark, 28 Okla. 399, 114 Pac. 730; Neeley v. Southwestern Cotton Seed Oil Co., 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145.

In Atchison, Topeka & Santa Fe R. Co. v. Moore, 29 Kan. 633, the court, in a very lucid opinion, states the rule as follows:

"In all cases, at common law, the master assumes the duty towards his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, with reasonably safe machinery, tools and implements to work with, with reasonably safe materials to work upon. * * * And at common law, whenever the master delegates to any officer, servant, agent, or employe, high or low, the performance of any of the duties above mentioned, which really devolve upon the master himself, then such officer, servant, agent, or employe stands in the place of the master, and becomes a substitute for the master, a vice principal, and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the acts or was guilty of the negligence."

The law imposes a nondelegable duty upon the master to use reasonable diligence to furnish a servant a reasonably safe place at which to work, and reasonably safe materials with which to work, and regardless of the rank of the servant who placed these boards with nails in them on this embankment, it is apparent that they were not there by accident, oversight, mistake, or misfortune, but that it was a part of the master's plan of preparing the place for these men to work to scatter these boards there with nails in them, and the master is therefore liable whether he acted in person or by other servants in thus negligently preparing this place for these men to work, and the doctrine of fellow servant has no application. S. & S. Co. v. Castleberry, 40 Okla. 613, 139 Pac. 837; C., R. I. & P. R. Co. v. Townes, 43 Okla. 568, 143 Pac. 681; Producers' Oil Co. v. Eaton, 44 Okla. 55, 143 Pac. 9; Rock Island Milling Co. v. Davis, 44 Okla. 412, 144 Pac. 600; Dewey Portland Cement Co. v. Blunt, 38 Okla. 182, 132 Pac. 659; Texas Co. v. Collins, 42 Okla. 374, 141 Pac. 783; C., R. I. & P. R. Co. v. Brazzell, 40 Okla. 460, 138 Pac. 794; McCabe & Steen Co. v. Wilson, 17 Okla. 355, 87 Pac. 320; Hardesty v. Largey Lumber Co., 34 Mont. 151, 86 Pac. 29; Rigsby v. Oil Well Supply Co., 115 Mo. App. 297, 91 S. W. 460; Schaub v. Hannibal & St. J. R. Co., 106 Mo. 87, 16 S. W. 924; Jones v. St. Louis N. & P. Pocket Co., 43 Mo. App. 398.

3. The defendant next complains because of the refusal of the court to give three requested instructions, numbered 1, 21, and 23.

Request No. 1 was for a peremptory instruction, for the jury to return a verdict for the defendant, which we think, for reasons heretofore stated, was properly refused.

Requests Nos. 21 and 23 are to the effect that it is not the duty of the master to inspect during their use common tools and appliances with which every one is conversant; but that it is the duty of the workmen themselves to remedy defects in such tools and appliances as arise from the use of them where it does not require the help of skilled mechanics to make such repairs. And, the defendant says:

"These two instructions are a statement of

the law applicable to the facts in this case, as declared by the Supreme Court in the case of St. L. & S. F. R. Co. v. Mayne, 36 Okla. 48, 127 Pac. 474, 42 L. R. A. (N. S.) 645, and Oklahoma Portland Cement Co. v. Shepard, 47 Okla. 258, 147 Pac. 1031, L. R. A. 1915E, 699."

It is true that this court, and courts generally, holds that where a defect in a tool or appliance used by a workman arises in the regular and ordinary prosecution of the work, and the defect is not of a permanent character and does not require the help of skilled mechanics to remedy it, the employer is not liable for injuries which may arise from such defects in such tools or appliances. But we doubt very seriously if the courts ever contemplated that this rule should be applied to a board with a nail in it. Under the evidence in this case the only use to be made of these boards with nails in them was to place them under the feet of the "horses," to prevent them from sinking into the soft earth when burdened with the weight of the bottom of the tank. And with that single use in view, we think these boards could no more be called tools or appliances than could the brick and mortar to be used in the foundation of a house. They were material, furnished by the master to be used in the prosecution of this work, and were neither tools nor appliances.

But instruction No. 17 given by the court instructed the jury as to the plaintiff's duty with reference to these boards with nails in them as favorably to the defendant as under the law the defendant had a right to expect.

4. The defendant also complains of three instructions given by the court, numbered 13, 15, and 18, and sets out its objections to instructions Nos. 13 and 15, but does not state the grounds upon which it objects to No. 18, and we will therefore consider objections to this instruction waived.

We think instructions Nos. 13 and 15, on the whole, gave the defendant more than under the law it was entitled to, but defendant says:

"They deprive the defendant of his defenses of assumption of risk by the plaintiff, and negligence of fellow servants of plaintiff."

No. 13 in substance tells the jury that a servant assumes the ordinary and usual risks incident to his employment, and such other risks as are known to him or which by the exercise of ordinary care he could have known; but that he does not assume risks created by the negligence of the master, or such as are latent and which by the exercise of ordinary care he could not have discovered. Besides, the court follows instruction No. 13 by saying to the jury in the next paragraph of the instructions.

"If you believe from the evidence in the case that the plaintiff received the injury complained of while in the employment of the defendant by tramping on a nail protruding through a mudsill and that the plaintiff knew, or by the exercise of ordinary care would have known, before receiving said injury that said nail was so protruding at a place where it was likely to be tramped on, then the plaintiff assumed the risk of receiving an injury from said nail, and your verdict must be for the defendant, even though you should find that the defendant was negligent in permitting a board with a nail protruding through it to be used as a mudsill."

This goes the limit in defendant's favor, and the defendant could not have asked more on the question of assumption of risk.

Instruction No. 15 is complained of because the court told the jury that it was a duty of the master to use reasonable care to furnish the servant a reasonably safe place for the performance of his work, and to use reasonable care to preserve the place in that condition. The defendant says this clause in the instruction "authorizes the jury to find the verdict for the plaintiff, even though the injuries were caused by the negligence of fellow servants of the plaintiff," and that it overlooked the fact that the master might be excused if the place became "unsafe by reason of changing conditions during the progress of the work, or by reason of transitory or temporary dangers that arise out of the progress of the work itself, or by reason of failure to repair or use properly appliances which may be and which usually are repaired by the workmen themselves."

While we think the evidence in this case shows conclusively that the injury was caused by the condition of the place as it existed at and prior to the time the plaintiff was directed to begin work there, and that ordinary care would have obviated the dangers to which he was exposed, yet the objection to the instruction urged on the ground that it imposed the duty of preserving the place in a safe condition is answered in C., R. I. & P. R. Co. v. Wright, 39 Okla. 84, 134 Pac. 427, where this court said:

"Equally important with the duty of furnishing reasonably safe appliances and places to work, in the first instance, is that of maintaining them in such condition, and making all necessary repairs thereto, for such duty is a continuing one, rendering the employer liable for negligence for failure so to do; he being held to the exercise of a reasonable diligence in this respect."

And as to the other objections raised as to instruction No. 15, we will say that for reasons stated heretofore we do not think the question of fellow servant entered into this case, or that there was any evidence to justify the court in submitting to the jury the question as to whether or not the unsafe condition of the place was due to changes incidental to the progress of the work, for it is manifest that this unsafe condition existed at and prior to the time plaintiff or his associates began work at the place, and was due to the negligence of the master in preparing the place at which they were to work. Yet the court, in other paragraphs of the instructions, gave instructions prepared and offered by the defendant covering both of these questions.

The judgment is affirmed.

KANE HARDY, THACKER, and RAINEY, JJ., concur. SHARP, C. J., and TURNER, OWEN, and MILEY, JJ., dissent.

THACKER, J. (concurring). I concur in the conclusion reached in this case and in the main in the reasoning of the opinion of the court; but although I think instruction No. 13 erroneous in part against the rights of the defendant and in part against the rights of the plaintiff under section 6, art. 23 (Williams', sec. 355), of our Constitution, I think the error was invited by the defendant and that in the main the instruction was more favorable to it than it was entitled to have the same.

My reasons for saying this instruction was erroneous will appear from an examination of the following cases: St. L. & S. F. R. Co. v. Long, 41 Okla. 177, 137 Pac. 1156, Ann. Cas. 1915C, 422, Osage Coal & Mining Co. v. Sperra, 42 Okla. 726, 142 Pac. 1040; St. L. & S. F. R. Co. v. Hart, 45 Okla 659, 146 Pac. 436; Gelruth v. Chas. T. Derr Construction Co., 15 Okla. 103, 151 Pac. 875.

And my reasons for concurring notwithstanding such error will be understood from the views expressed in my concurring opinions in the following cases: St. L. & S. F. R. Co. v. Bell, 58 Okla. 84, 159 Pac. 336, L. R. A. 1917A, 543; Oklahoma Railway Co. v. Thomas, 63 Okla. 219, 164 Pac. 120.