## SINGER SEWING MACHINE CO. v. ODOM.

No. 24887.   May 28, 1935.

Everest, McKenzie, Halley & Gibbens, for plaintiff in error.

Kelly Brown, for defendant in error.

PER CURIAM.   This case presents an appeal from the district court of Muskogee county.   It was instituted by J. T. Odom against the Singer Sewing Machine Company to recover damages for an injury suffered by Odom in the course of his employment, and the parties will be referred to as they appear in the lower court.   There is little conflict in the testimony as to the material facts.   The plaintiff, Odom, was employed by the defendant at its Muskogee office, as a collector and salesman.   The manager of the office at the time of the accident was J. O. Nanna.   R. C. Fraim was assistant manager, whose duties were to sell machines and collect, and assist the manager.

In the performance of their work the outside men furnished their own cars, and in the case of R. C. Fraim the defendant company allowed him a small weekly allowance for the use of his car.

On the date of the accident the manager, Nanna, directed the plaintiff and Fraim to go to a house in Muskogee and reclaim a machine known as an electric console type, weighing approximately 90 pounds.   They went in Fraim's automobile, which was a Chevrolet coach.   The machine was carried out to the car from the house by plaintiff and Fraim, and in attempting to tie the machine onto the side of the car with two legs on the running board, the machine fell to the ground and injured plaintiff's (Odom's) foot.   The testimony is conflicting as to just how the accident happened, plaintiff's theory being that he and Fraim brought the machine out and set it down upon the running board of the car and Fraim then said, "Get the rope and tie it," and plaintiff then "turned the machine loose and stepped back to get the rope to tie it, and I can't say if he let slip or turned loose or what,

anyway the machine fell and the cabinet fell and hit me on the instep of the left foot." Fraim testified that they started to set it on the running board and Mr. Odom's foot either slipped or he (Odom) stepped into a ditch and Odom's end of the machine fell. We do not think the details of how the accident happened are material, in view of the conclusion reached, but it is admitted that plaintiff's foot was injured, and upon submission of the case to the jury a verdict in plaintiff's favor was returned in the sum of $500. Motion for new trial was duly filed and overruled, and judgment was entered by the court below, to reverse which this appeal was prosecuted.

Plaintiff's theory, upon which the case was tried and submitted to the jury, was that defendant was negligent in its failure to furnish plaintiff a proper conveyance for the sewing machine, or, in other words, that the automobile furnished for hauling the machine was not a safe and careful way of hauling a 90-pound sewing machine; and also that the assistant manager, R. C. Fraim, was addicted to the use of alcoholic liquor and was in a drunken condition at the time of the accident, and that this assistant manager was grossly negligent in the way of handling the machine, permitting it to drop on plaintiff's foot.

The case was defended on the theory that R. C. Fraim was a fellow servant of the plaintiff, and that therefore the defendant is not liable for plaintiff's injury, caused by the negligence of a fellow servant, and that a master is not liable for incompetence of a servant where he has no knowledge thereof or facts sufficient to put him on notice, and, furthermore, that there was no evidence of primary negligence to submit to the jury. At the close of the testimony defendant moved for an instructed verd'ct. which was denied and exception was noted.

The general propositions of law announced by both parties are not open to question. It is the master's personal duty to furnish a servant with a reasonably safe place in which to work, with reasonably safe appliances, and to exercise reasonable care to provide reasonably careful, prudent, and competent fellow servants, and where a failure to discharge any one of such duties constitutes the proximate cause of an injury, the master will be held liable for damages. New v. McMillan, 79 Okla. 70, 191 P. 160; Ardmore Oil & Milling Co. v. Barner, 72 Okla. 231, 179 P. 932; Producers & Refiners Corp. v. Castile, 89 Okla. 261, 214 P. 121; Ardmore Oil & Milling Co. v.

Robinson, 29 Okla. 79, 116 P. 191; Cosden Pipe Line Co. v. Berry, 87 Okla. 237, 210 P. 141.

However, the question as to whether or not an employee is a fellow servant or a vice principal or superior servant is one of law for the court under the facts of each case. Allen v. Chamberlain, 134 Tenn. 438, 183 S. W. 1034; Grant v. Nihill, 64 Mont. 420, 210 P. 914; Yates v. McCullough Iron Co., 69 Md. 370, 16 Atl. 280; Donnelly v. San Francisco Bridge Co., 117 Cal. 417, 49 P. 559; Callan v. Bull, 113 Cal. 593, 45 P. 1017.

Under the undisputed evidence in this case, the plaintiff and Fraim were directed by the manager of the agency to go out and get a machine and bring it to the office, an act requiring no discretion and in no manner hazardous. In the performance of this act they were working in conjunction in a common undertaking to a common end, and whether Fraim was a superior servant or vice principal is not material in this particular undertaking. From a careful review of the whole record we are unable to find where the general situation, the nature and magnitude or simplicity of the task to be performed required any supervision. Plaintiff contends that Fraim directed him to get the rope which was inside the car and tie the machine on the running board, whereupon plaintiff turned the machine loose and stepped back to go around to get the rope to tie it, and the machine fell, causing the injury. Assuming that Fraim was a superior servant or vice principal, the loading of this machine was a mere detail and a master is not required to direct the manner of the execution of minor details of ordinary work. Cosden Pipe Line Co. v. Berry, supra.

We hold, as a matter of law, that in the performance of the act out of which the accident occurred, and plaintiff sustained an injury, they were acting as fellow servants. Kreps v. Brady, 37 Okla. 754, 133 P. 216; Cosden Pipe Line Co. v. Berry, supra; Riter Conley Mfg. Co. v. O'Donnell, 64 Okla. 229, 168 P. 49.

The case was submitted to the jury on general instructions, the substance of which was that plaintiff must show by a preponderance of the evidence that defendant was guilty of negligence and this negligence was the proximate cause of the injury. This presented to the jury the two acts of negligence charged, namely, failure to provide a reasonably safe method of transporting machines, and reasonably careful, pru-

dent and competent fellow servants, and a general verdict for plaintiff was returned. From our view of the case, the pivotal question involved is that of primary negligence.

In every such case involving negligence, three essential elements must be apparent: First, the existence of a duty on the part of the master to protect the servant; second, the failure of the master to perform this duty; and, third, injury to the servant, proximately resulting from such failure. St. L & S. F. Ry. Co. v. Snowden, 48 Okla. 115, 149 P. 1083; Ft. Smith & Western Ry. Co. v. Knott, 60 Okla. 175, 159 P. 847.

The duty of furnishing a reasonably safe place in which to work, reasonably safe appliances with which to perform the work, and reasonably careful, prudent and competent fellow servants, is a nondelegable duty. Prickett v. Sulzberger & Sons, 57 Okla. 567, 157 P. 356. Unless plaintiff is able to plead and prove failure on the part of the master to provide these personal safeguards of law, he cannot recover.

The record in this case discloses that a demurrer was sustained to plaintiff's original petition, which charged the defendant with failure to provide him a safe place in which to work and safe appliances with which to perform such work. The amended petition reiterated the charges in the original petition, and added a further charge of negligence on the part of the defendant by reason of the intoxicated condition of R. C. Fraim, with knowledge on the part of defendant of Fraim's habits of drinking, and knowledge that he was an unfit and improper person to assist or work with plaintiff, and that having possession of this information the defendant continued the said R. C. Fraim in its employment. The testimony with reference to Fraim's state of sobriety is conflicting. Plaintiff's testimony on this point is as follows:

"Q. At that time did you notice his condition as to whether he was sober or not? A. Well, he didn't look very sober when he came back. Q. When he came back? Well, what was said and done by him to show that condition? A. Well, he had bought some tomatoes from this Mrs. Brown and when he left he didn't have the change and he told her he would go and buy a bottle of something to put on my foot, and when he came back he didn't pay her for the tomatoes. Q. Well, anything else to indicate his condition? A. Well, he was very unsteady in walking and when we started to leave there he was very unsteady about driving. Q. Had you noticed him being in that condition that day before this time? A. I hadn't noticed him being like he was, no. * * * Q. State, if you know, what his habits were about that? A. Yes, I knew that he drank occasionally. Q. Did you know that he ever got drunk before that time? A. Well, I had never seen him as drunk as he was that day before. * * * Q. What do you know as to whether or not Mr. Nanna did know it? A. I can't say he personally did know it but I've seen him in conditions he should have known it. Q. You mean you have seen Mr. Fraim about the office where Mr. Nanna was? A. Yes. Q. And when you have seen him about there, what was Mr. Fraim's condition? A. Well, I seen him when he was very unsteady and looked like he was very much under the influence of alcohol of some kind. Q. That is since this accident happened? A. Yes. Q. Now, do you know about his conduct about the office and his association with Mr. Nanna during that time, and before that time, about his drinking? A. Well, I wouldn't say that Mr. Nanna ever seen him take a drink because I don't believe I could prove that, but it appears to me that he would have smelled it on his breath. Q. Could you have smelled it on his health? A. Yes, I have smelled it on his breath. Q. And was that while he was at the office at his work? A. At various times."

On cross-examination Odom testified that he did not notice that Fraim was drinking at the time they went out after the machine, but he knew that he was under the influence of liquor lots of times, but that he smelled whisky on his breath that day before he went in to get the machine.

Mrs. Seythia Brown, from whose home the machine was taken on the day of the accident, testified as to Mr. Fraim's condition:

"Q. Did you observe any unusual condition at the time, Mrs. Brown, in the appearance or condition of Mr. Fraim? A. I smelled liquor on his breath and he did not seem in the usual way. He acted kind of ungentlemanly about things. Q. Was there anything else connected with his appearance that day that tended to impress this upon your mind? If so, what? A. He pulled the machine around kind of rough and it seems as though he was drinking and out of his usual manner that he should act it seems like. He bought some tomatoes of me and said, 'I have not got the change but as soon as I drive to the store. I will bring the change back,' but after he came back, he had forgotten all about the tomatoes."

On cross-examination she testified:

"Q. Did Mr. Odom indicate to you that he thought Mr Fraim was not acting as

he usually acted? A. I says to Mr. Odom, 'I believe Mr. Fraim has been drinking', and he just laughed. Q. Did Mr. Fraim walk unsteadily or reel around or anything like that when he came into the house and while he was talking to you? A. He kind of acted peculiar a little bit in his walk. Q. He did not stumble or fall down? A. No. Q. He did not reel or act like a drunk man usually acts, did he? A. No."

The above, in substance, is all of plaintiff's testimony seeking to charge defendant with negligence in its failure to furnish reasonably careful, prudent and competent fellow servants.

Fraim testified that he had not been drinking at all that morning, but that he was not a teetotaler, and Manager Nanna testified that he did not know on or prior to the date of the accident that Mr. Fraim ever took a drink.

Under this state of the record, therefore, can it be said that there is any evidence competent to charge defendant with negligence, or to indicate any causal connection between the condition or habits of Fraim and this accident?

It was said by this court in the case of O., R. I. & P. Ry. Co. v. Nagle, 55 Okla. 235, 154 P. 667:

"The question here presented is not the sufficiency of the evidence to establish the negligence of the defendant, but was there any evidence tending to prove negligence?"

If the jury found the defendant guilty of negligence in failure to provide a safe or proper vehicle for transporting the machine, from the record there is no evidence to support the verdict. If the jury found the defendant guilty of negligence in that Fraim permitted the machine to fall on plaintiff's foot, this was an act of a fellow servant engaged in a simple common undertaking, the details of which are not chargeable to the master. If the jury found the defendant guilty of negligence in furnishing a fellow servant who was intoxicated at the time of the accident and known to the defendant as a habitual drunkard, the record does not contain evidence to justify submission of this charge to the jury, as no causal connection is shown between such neglect and the injury, and the evidence is not such that a person of ordinary intelligence would have foreseen that the injury was liable to be produced by any of the acts of negligence charged.

In the case of Sallisaw Cotton Oil Co. v. Holland, 56 Okla. 428, 156 P. 174, plaintiff sought to recover for injuries sustained at a cotton gin, by stepping into a conveyor. The questions there for consideration, as stated by the court, were as follows: First, Was the defendant negligent in not having said cotton seed conveyor covered? And, second, if it was negligent in not having said cotton seed conveyor covered, was such negligence the proximate cause of the injury suffered by the plaintiff? The court stated:

"Even if it be admitted that the failure to have said cotton seed conveyor covered was negligence, we are at loss to see any causal connection between said negligence and the injury received. To entitle the plaintiff to recover it must be shown that the injury received was the result of causal connection with the negligence alleged."

In the case of Desjardins v. St. Paul & T. Lumber Co., 54 Wash. 278, 102 P. 1034, the court in the syllabus held:

"Defendant's head millwright directed B., another millwright, to take plaintiff and some helpers and set up a post in the mill. While plaintiff was working at the foot of the post B. released his hold of it with his hands and took hold of a block and tackle attached to the post, which thereupon fell on plaintiff. There was evidence that a 10 year old boy could have held the post with his hands. Held that, conceding that B. was a foreman for the purpose of directing the work, he was, in holding the post, performing a mere detail of the work, and his negligence was the negligence of a fellow servant for which defendant was not responsible."

The nature of the service for which plaintiff in this case was employed was not hazardous; therefore, the rule as announced in Producers & Refiners Corporation v. Castile, supra, is not applicable, wherein the court held that a master is bound to institute affirmative inquiries in order to ascertain the qualifications of a servant for which special qualifications are necessary, where the service in which the servant is to be employed is such as to endanger the lives of persons and employees.

In the case of Soltz v. Southwestern Cotton Oil Co., 28 Okla. 706, 115 P. 776, the plaintiff stepped into a moving screw of a conveyor and received injuries, and the trial court sustained a motion for an instructed verdict, which was affirmed by this court, saying:

"To convict the master of negligence, plaintiff must not only prove the injury, but must go further, and prove that the failure of the master to use the cover as

used the previous season was the proximate cause of his injury, and that the master, by the exercise of such care and foresight as a man of ordinary prudence should have exercised under like circumstances, should have reasonably anticipated that his failure so to do would result in plaintiff being injured as he was. Coupled with proof of the physical fact of injury, proof of the latter is indispensable to a recovery, for the reason that the master is entitled to the presumption that he has done his duty, and therefore is not negligent, and further proof is necessary to overcome this presumption."

This case and many others were cited and discussed in the case of Cosden Pipe Line Co. v. Berry, 87 Okla. 237, 210 P. 141, the holding of which is applicable and controlling here. In that case an employee was killed while assisting in dismantling a water tank, work in its nature hazardous. The plaintiff recovered a verdict, and this court affirmed it and held:

"The master is not an insurer of the safety of his servants; neither is the master required to superintend and direct the manner of the execution of minor details, and where such has been negligently done by a servant, to the injury of a fellow servant, the master would not be liable."

And again the court said:

"A master is not required to superintend and direct the manner of the execution of minor details of the work, and where such has been negligently done by a servant to the injury of a fellow servant, the master would not be liable for a failure to prescribe a rule or regulation."

The court stated that this was a correct statement of the law where the facts applied, and we believe the facts in the case at bar make the above principle of law applicable here.

In the case of C., R. I. & P. Ry. Co. v. Nagle. supra, the court held:

"Negligence must be shown by evidence. Proof of injury is not proof of negligence. The evidence, to justify a finding of negligence, must show a breach of duty on the part of the defendant, such that a reasonable person should have foreseen would as a natural consequence cause an injury; not necessarily would probably cause an injury in the sense of more likely to cause an injury than not, but the likelihood must be such that a reasonable person could foresee that injury would result in the ordinary course of things—that injury was one of the probable results and likely to happen. A mere possibility of the injury is not sufficient, where a reasonable man would not consider injury likely to result from the

act as one of its ordinary and probable results."

Can it be said, as a matter of law in this case, that the evidence justifies a finding of negligence in the failure on the part of the defendant to furnish plaintiff with reasonably safe appliances and reasonably careful, prudent, and competent fellow servants, such that a reasonable person would have foreseen would, as a natural consequence, cause the injury complained of? We do not think so, and the lower court erred in refusing to instruct the jury to return a verdict for the defendant, and this cause is therefore reversed and remanded to the lower court, with instructions to sustain the motion of the defendant for an instructed verdict.

The Supreme Court acknowledges the aid of Attorneys Alvin Richards and H. W. Randolph in the preparation of this opinion. These attorneys constituted two members of an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Richards and approved by Mr. Randolph, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, and GIBSON, JJ., concur.