## STOUT v. SCHELL.

No. 34311. March 11, 1952.

*241 P. 2d 1109.*

J. M. Hill Tulsa, and Paul Pugh, Oklahoma City, for plaintiff in error.

Butler & Rinehart and David J. Morrison, Oklahoma City, for defendant in error.

PER CURIAM. Malvin B. Stout, a minor, 20 years of age, by Harry M. Stout, his father, as his next friend, brought this action against W. R. Schell, doing business as Schell Nursery Company, who is engaged in the general nursery business in Jenks, Oklahoma, to recover damage for alleged personal injury sustained by him while in the employ of the defendant.

In his second amended petition he alleges that one Jack Bell was the agent, servant and employee of the defendant and that all acts alleged to have been done by the said Jack Bell were done within the scope of his employment as agent, servant and employee; that said Jack Bell was, on November 24, 1946, a truck driver for the defendant; that the plaintiff on that date was employed by the defendant as a helper for said driver and was under his direction and control; that at about

9:30 o'clock a. m. of the said date, the said Jack Bell and plaintiff were riding in, and Jack Bell was driving an old dilapidated truck of the defendant on Highway No. 18 approximately five miles south of Chandler, Oklahoma, at about 50 miles per hour when the truck left the highway and turned over causing serious and permanent injuries to the plaintiff.

Plaintiff further alleges that said accident and resulting injuries were caused by the negligence and carelessness of the defendant and his agent and employee in the following particulars, to wit:

(a) That said employee was driving said truck, which was an old dilapidated truck, at a rate of speed approximately 50 miles an hour.

(b) In that the water and anti-freeze hose on said truck was defective and worn out, said hose bursting and causing the contents to run out, over and onto the hot motor, which in turn, caused steam and smoke to fill the truck cab; that as said steam and smoke prevented the driver from seeing where he was going or how to drive the truck, he drove the same off the highway at said high rate of speed and caused the truck to turn over.

(c) In that the driver of the truck failed and neglected to keep it on the highway.

Plaintiff further alleges that prior to said accident and resulting injuries he was an able-bodied man nineteen years of age.

That as a direct and proximate result of said accident, plaintiff sustained serious and permanent physical, nervous and mental injuries; that he has sustained permanent and disfiguring scars and injuries about and upon his face and head; that his head was badly crushed and that he has headaches which are periodic and permanent and that he is subject to shock and cannot control his reflexes and reactions; that his nose is mashed and crushed and disfigured and that his breathing is laborious and restricted and that when he talks, he talks "through his nose", and plaintiff prays judgment in the sum of $10,000.

Defendant's answer consists of a general denial and specifically pleads that at the time of the injuries complained of the said Jack Bell and the plaintiff were acting in the scope of and in the course of their employment; that they were co-employees and fellow servants and, therefore, the defendant is not liable for any acts of a fellow servant; denies that the truck was defective and worn out and also pleads contributory negligence on the part of the plaintiff, and prays for discharge of the defendant and for costs.

In reply, plaintiff denies generally each and every allegation in defendant's answer.

Plaintiff introduced his testimony and rested. The defendant thereupon interposed the following demurrer:

"Comes now the defendant and demurs to the evidence of the plaintiff herein, for the reason that the plaintiff has failed to establish that he was injured by any act of carelessness or negligence of the defendant, Mr. W. R. Schell; second, that if any act of negligence or carelessness was proven, it constitutes the act of a fellow servant for which Mr. Schell, the defendant, would not be responsible; third, that he has failed to prove any defective condition of equipment being used; and further, that if such defect was proven, knowledge on the part of this defendant has not been proved."

After the demurrer was argued, the plaintiff asked, and was granted, permission to reopen the case and to put on additional testimony. After additional testimony was introduced and plaintiff again rested, the defendant renewed his demurrer as previously dictated in the record, and the court thereupon found "there is no evidence to show any defect in the car and the burden is on the plaintiff to show that", and also it was the duty of the court

as a matter of law to determine whether the plaintiff and Jack Bell were at the time fellow servants, and held that they were fellow servants, that under the evidence the defendant was not liable for the acts of Jack Bell, and sustained the demurrer, from which decision this appeal was taken.

The briefs of each of the parties hereto are based on two propositions as follows:

(1) Was the defendant guilty of negligence in failing to furnish a proper car or proper fellow employees?

(2) Does the fellow servant rule prevail in this case?

It is the nondelegable duty of a master to use ordinary care and prudence in providing his servants with a reasonably safe place in which to work, reasonably safe tools and appliances with which to work and reasonably safe and competent fellow servants with whom to work; failure in any one or more such duties will render the master liable for damages approximately resulting from such failure. Prickett v. Sulzberger & Sons Co., 57 Okla. 567, 157 P. 356; Sulzberger & Sons Co. of Oklahoma v. Strickland, 60 Okla. 158, 159 P. 833; Singer Sewing Machine Co. v. Odom, 172 Okla. 411, 45 P. 2d 473; Chicago, R. I. & P. Ry. Co. v. Rogers, 60 Okla. 249, 159 P. 1132; Buxton v. Hicks, Adm'x, 191 Okla. 573, 131 P. 2d 1015; Riter-Conley Mfg. Co. v. O'Donnell, 64 Okla. 229, 168 P. 49; Producers' & Refiners' Corporation v. Castile, Adm'x, 89 Okla. 261, 214 P. 121.

A master is not an insurer of his servants, neither is he required to superintend and direct the manner of the execution of minor details and where such has been negligently done by a servant to the injury of a fellow servant, the master is not liable. Cosden Pipe Line Co. v. Berry, 87 Okla. 237, 210 P. 141; Singer Sewing Machine Co. v. Odom, supra.

If the truck was old and dilapidated and unfit for use in defendant's said business, and was so known or by the exercise of reasonable diligence could have been known by the defendant, or, if the employee, Jack Bell, was unfit for any cause known or by the exercise of due diligence could have been known by the defendant to do the work he was called upon to do with the other employees of the defendant, the question of negligence on the part of the defendant should have been submitted to the jury.

If otherwise, the decision of the trial court in sustaining the demurrer was correct.

The plaintiff testified with reference to the truck used by him and the said Jack Bell as follows:

"Q. Did this truck have a speedometer on it that was working? A. No.

"Q. What in your judgment was the speed of the truck at the time, before you had this accident, immediately before you had this accident? A. I would say fifty-five miles an hour, sixty."

"Q. All right, what happened as you were going around this truck? A. Well, some black smoke—something started coming up from the floor board, we could not see anything, later I found out we was in the ditch, two fellows had hold of me, taking me away, my nose bleeding and I just begun to come to my senses.

"Q. Where was this truck after the accident? A. Laying off to the right side of the road."

On cross-examination he testified as follows:

"Q. And then the morning of the accident you had ridden in the truck from Oklahoma City out to Midwest City? A. Yes sir.

"Q. Then you had ridden in the truck from Midwest City up to the point of the accident? A. That is right.

"Q. Did you see anything about the condition of that truck that you, in your own opinion, thought was defective or wrong about it? A. No, it was just the floorboard that was loose, there is spaces in the floorboard, right along

where the battery was, I believe it was on the right-hand side, and the air was coming up through there pretty strong from the wind.

"Q. You got some air up through the floorboard? A. That is right.

"Q. The truck operated all right while you were riding in it, did it not? A. Yes, sir.

"Q. Up to the point of this accident? A. That is right.

"Q. You testified on direct examination that all of a sudden a lot of smoke came up in the cab of the truck. At any time prior to that happening, did you have any warning or indication that such was about to happen? A. No.

"Q. It just happened like that, no warning, no nothing, didn't it? A. Happened all of a sudden.

"Q. You heard no noise, no explosion or anything of that nature? A. No, the exhaust pipe, I believe there was no exhaust pipe at that time, it made a blow-back sound from the motor, but that is all.

"Q. But you had no warning that this smoke was about to come up in the truck? A. None at all.

"Q. Now, when the smoke did come up in the truck, what kind of smoke was it? Tell the jury what you found about it. A. What I say, just a little bit at a time there, just a dark black smoke. Seemed like there was a little dampness in here, you could tell, it happened so sudden."

"Q. In 1946, did you hold a regular driver's license or chauffeur's license? A. Chauffeur's license.

"Q. That entitled you to drive trucks? A. Yes, sir.

"Q. You were an experienced driver, were you not? A. That is right.

"Q. Did you at any time, up to the point of this accident, find any reason to complain to Jack Bell about the manner and method that he was driving that truck? A. I did not caution him on his driving, no, sir, but I—

"Q. You did not answer my question, I say did you find any reason to com-plain? A. Yes, he was exceeding the speed, driving over the speed of forty-five miles an hour, I believe, which is a state law.

"Q. Well, now, who told you that is the state law, Malvin? A. I taken that on my chauffeur's test.

"Q. Who told you that? A. I studied that.

"Q. You think he was exceeding the speed limit, is that correct? A. Well, he was exceeding the speed limit, yes.

"Q. You have told the jury, your best judgment, he was driving between fifty and fifty-five, is that correct? A. Fifty-five or sixty.

"Q. And you were riding there, is that right? A. Yes.

"Q. And you at no time ever warned him or asked him to slow down did you? A. No."

There is no other evidence in the record as to the condition of the truck.

The court is mindful of the fact that the plaintiff at the time of the accident was eighteen years of age; but the plaintiff himself testifies that he held a chauffeur's license in Oklahoma which entitled him to drive trucks; that he was an experienced driver and that the truck operated all right while he was riding in it. The burden of proof was on the plaintiff to show the truck was not in a reasonably safe condition to do the work for which it was being used and, if such proof were made, the burden was further on the plaintiff to prove that the defendant knew, or by the exercise of reasonable diligence, should have known, that the truck was unfit to do such work.

The evidence is insufficient to show that the truck was unfit to perform the work for which Jack Bell and the plaintiff were using it and the trial court was correct in sustaining the demurrer on this point.

The evidence introduced by the various witnesses shows that Jack Bell was driving the truck between 50 and 60 miles per hour. If the sole question

to be decided were whether or not Jack Bell was guilty of negligence, it should have been submitted to the jury; but in this case the defendant pleads that the fellow-servant rule applies. If it does apply, should the defendant be held liable for the negligence of a fellow servant?

On direct examination he testified:

"Q. (By Mr. Pugh) When Mr. Schell wasn't around, who did you take orders from in regard to your work? A. Jack.

"Q. Jack Bell? A. Yes.

"Q. Did he tell you what to do and how to do it? A. No sir, we hadn't done any work. As of that time, we were just going to Tulsa for that load of shrubbery. He told me to come on, 'We are ready to go.' "

And further on direct examination:

"Q. Malvin, as you were leaving Midwest City out there, did you hear Mr. Schell give Jack Schell (Jack Bell) any instructions in regard to what you were to do in Jenks? A. We were to go to Tulsa, down at Jenks, south of here, get that load of shrubs and come back.

"Q. And did you hear instructions in regard to that? A. No, they were on the south side of the house, I believe, the house faces west.

"Q. Who gave them to who? A. Mr. Schell was telling Jack Bell."

There is no other testimony in the record as to any order or direction given by defendant to either the plaintiff or Jack Bell.

Plaintiff, however, fails to offer any evidence tending to show that Jack Bell was in the habit of driving a truck too fast or that the defendant had any knowledge that Jack Bell was in the habit of driving a truck too fast, or that Jack Bell was an incompetent employee in any respect, or that the defendant had knowledge of such incompetency on the part of Jack Bell. No evidence of any kind was offered by plaintiff tending to show that the defendant was in any manner guilty of negligence in employing Jack Bell. Plaintiff in his brief advances the theory that Jack Bell was a vice principal, foreman or superior servant of the defendant and that, therefore, the defendant was liable for his negligent acts.

Plaintiff does not allege in his petition that Jack Bell was a vice principal, foreman or superior servant and the evidence is wholly silent that he was so employed or so acted.

Plaintiff alleges in his petition, however, that Jack Bell was the agent, servant and employee of the defendant and that the defendant employed the plaintiff as a helper for said driver and was under his direction and control. There is not one word of testimony even by the plaintiff himself that he was employed as a helper for the said driver, Jack Bell. There is nothing in the record to show that the plaintiff was instructed by the defendant to obey orders of Jack Bell and there is nothing in the record to show that Jack Bell ever gave plaintiff any orders.

This court has held in the case of Singer Sewing Machine Co. v. Odom, 172 Okla. 411, 45 P. 2d 473:

"The question as to whether or not an employee is a fellow servant, vice principal, or superior servant, is one of law for the court under the facts in each case; . . ."

It was the duty of the trial court to pass on the question.

On direct examination the plaintiff testified, however, that at one time as they were leaving in the truck for a load of shrubbery, "he told me to come on, we are ready to go".

The record fails to show that Jack Bell was given any authority to manage or in any manner control the business of the defendant or to direct the employees as to the manner in which the work should be performed, nor does the evidence tend to show that he ever assumed to act in such capacity. All the orders and directions with reference to the business came from W. R. Schell, defendant herein.

The plaintiff and Jack Bell were both employed by the same master, both were engaged in a common undertaking and to accomplish a common purpose. Hence, if there is any negligence for which the master is liable it is negligence resulting from the employment of Jack Bell or negligence in retaining him after his incompetency was discovered or might have been discovered by the exercise of ordinary care. No such proof has been shown.

Where the common law doctrine of fellow servants has not been abrogated or modified, the master is not liable for injury to a servant resulting from the negligence of a fellow servant, in the absence of a showing that the master failed to exercise reasonable care in selecting, employing or retaining such servant. Constitution of Oklahoma, art. IX, §36; 12 O. S. 1951 §2; Mid-Continent Petroleum Corporation v. Fleming, 196 Okla. 605, 167 P. 2d 366.

The question as to whether or not an employee is a fellow servant is usually one of law for the court under the facts in each case.

Under the evidence in this case, the fellow servant doctrine clearly applies. Plaintiff and Jack Bell were fellow servants. The evidence wholly fails to show that the defendant was guilty of negligence in employing Jack Bell and he is, therefore, not liable for any injury that plaintiff may have received resulting from the negligence of Jack Bell, if any. Mid-Continent Petroleum Corporation v. Fleming, 196 Okla. 605, 167 P. 2d 366; Singer Sewing Machine Co. v. Odom, 172 Okla. 411, 45 P. 2d 473; Kanotex Refining Co. v. Bonifield, 74 Okla. 304, 183 P. 971.

It was the duty of the trial court to sustain the demurrer to the evidence.

The judgment of the trial court is affirmed.

This court acknowledges the services of Attorneys Kelly Brown, A Camp Bonds, and Harry G. Davis, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

HALLEY, V. C. J., and CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur. BINGAMAN, J., dissents.