ENID TRANSFER & STORAGE CO.,
INC., v. MOLLENHAUER.

No. 34581.   Sept. 9, 1952.

Rehearing Denied Nov. 5, 1952.

Application for Leave to File Second
Petition for Rehearing Denied
Jan. 10, 1953.

*251 P. 2d 1068.*

Duke Duvall, Dudley, Duvall & Dudley, Oklahoma City, and McKnight & Edwards, Enid, for plaintiff in error.

Hugh Conway and Elam & Crowley, Enid, for defendant in error.

JOHNSON, J.   Plaintiff in error appeals from a judgment based upon a jury's verdict for $14,000 rendered in the district court of Garfield county, Oklahoma, on October 25, 1949, for the alleged wrongful death of defendant in error's husband, Charles W. Mollenhauer, caused by a heavy crate of plate glass falling on him while he and six other men were unloading plate glass from an open steel rail car at the freight dock of the Frisco Railroad in Enid, Oklahoma.

The parties will be referred to as they appeared in the trial court.

The record discloses that deceased was 58 years old and had worked for the defendant for many years and was classed as a warehouseman or truck driver. Due to his previous experience and the lack of experience of his helpers, it appears that he was in charge of unloading the plate glass at the time of the accident but was not a superior servant or vice principal. Chap-Tan Drilling Co. v. Myers, 203 Okla. 642, 225 P. 2d 373.

The railroad car from which the glass crates were being unloaded was an ordinary open steel car with steel sides about four feet high on all four sides, usually referred to as a "coal car." It had a flat bed. The ends of the car were removable, but the sides were not. The car was on an east and west siding. It was loaded with crates of plate glass standing upright, on edge, parallel to the car. The crates varied in height from five to nine feet, with a length of approximately eleven feet and a thickness of about ten to twelve inches. The crates were packed side by side, wedged between the two sides of the rail car, and were braced by boards being nailed from the crates to the floor of the rail car. The weight of the plate glass varied from 2,000 to 3,000 pounds.

There were two sets of these plate glass crates, one packed in each end of the car. Deceased was engaged in unloading the plate glass in the west

end of the rail car when the accident occurred.

The unloading was done by removing the endgate at the west end of the rail car and backing defendant's truck up to and against the west end of the car where the endgate had been removed. The truck was equipped with a winch; the drum and power machinery was located in the front of the truck just back of the cab. The winch line ran from the drum towards the back end of the truck, near the floor thereof, into the rail car. This 3/4 inch steel cable winch line was equipped with a short length of chain with a hook on the end of it. This winch was looped around the upright sides of a crate and hooked. After the line was secured, the driver started the machinery, drawing or dragging the crate of plate glass across the floor of the rail car on out to the end of the car onto the truck, which was approximately the same height.

In this operation two men are located on top of the cases, one at each end, and the cable is handed to the man on the end nearest the truck and he passes it along to the man at the opposite end of the cases, who then hands the end of the cable down to the man standing on the floor of the truck. There are four men on the floor of the truck and the line or cable is passed from one to another back to the end of the truck, where it is hooked onto the cable. The men on top of the crates nail trusses made of 2 x 4's to each end of the crate. To these trusses are attached guy ropes extending to the ground in both directions, which are used for the purpose of steadying and keeping upright the crates of glass. After the cable has been brought completely around the bottom of the crate and hooked, the men on top get down and go to their guy ropes. There are four men on the guy ropes, two on each side. One of the men on the floor of the car is used on the ropes. The remainder of the men remain in the car during the entire operation. The machinery is then started up and the crates dragged or pulled from the car onto the truck, with the men on the guy ropes attempting to steady it as it moves forward.

The carload of glass on the day of the accident was being unloaded in the manner outlined above. Five cases had been removed, and the workmen were in the process of removing the sixth crate when the accident occurred. The end of the cable had been passed from one end to the other in front of the standing crate and had been hooked when the crate toppled over, catching the deceased between the crate and the side of the rail car. The crate pinned the deceased against the side of the car and completely smashed and crushed his head, killing him instantly. The men on top of the crates had left their places to man the ropes when the accident occurred. There was no one on top holding the cases, nor had they reached their places at the guy ropes at that time. The deceased was standing in front of the cases about midway between the two ends. He had passed the cable on to one Stewart, who was undertaking to hook the winch line when the crate came toppling over.

At the time of the accident Bonnie Lee Painter was at the northeast corner of the crate and passed the cable on to the deceased, who was to his right in the center directly in front of the crate, and deceased passed the cable on to Stewart, who was on his right near the northwest corner of the crate. Standing next to him was Gosney, the truck driver who was to operate the winch.

At the time of the accident, in the other end of the car, similar crates of heavy plate glass stacked in a similar manner were being unloaded by Dale Williams. He was using an A-frame mounted truck, which was used to lift the crates of plate glass up and over the side of the railroad car. The co-workers of deceased were unable to remove the crate of plate glass which had the deceased pinned against the side of the rail car with the equipment they had, and they called upon Wil-

liams for assistance. Williams placed a chain around the crate of glass and with the overhead lift removed the crate from the body of deceased. No attempt was made by defendant to unload the remainder of the crates of glass by its method, but the job was finished by Williams by his overhead lift system.

The plaintiff defends her judgment upon the charge that the defendant was negligent in failing to furnish deceased with (1) a safe place to work; (2) a safe method to do the work; (3) safe tools and equipment, and (4) competent and safe co-workers.

The defendant contends that this court should reverse this cause because the trial court erred in overruling the demurrer to the plaintiff's evidence and its motion for a directed verdict.

Since there is no material dispute as to the facts, there remains only the application of the law pertinent to the issues.

If there is any evidence reasonably tending to support plaintiff's theory of negligence, the case should be submitted to a jury. What constitutes negligence is a question for the jury unless facts are such that all reasonable men must draw the same conclusion. Oklahoma Ry. Co. v. Strong, 204 Okla. 42, 226 P. 2d 950. The question as to whether a negligent act involving breach of duty on the part of the master to his servant is the proximate cause of servant's injury, is one of fact for the jury if there is evidence reasonably tending to prove same (Cushing Gasoline Co. v. Hutchins, 93 Okla. 13, 219 P. 408), and evidence tending to prove essential facts either directly or indirectly, or by permissive inference, is sufficient to sustain a judgment. West v. Abney, 203 Okla. 227, 219 P. 2d 624. In law actions tried to a jury this court will not weigh the evidence, but will examine the record to determine whether there is competent evidence to support the verdict and judgment based thereon. If any competent supporting evidence is found, the judgment will not be disturbed on appeal; and where there is any competent evidence offered by plaintiff reasonably tending to establish plaintiff's cause of action alleged in the petition and which tends to support a verdict and judgment for the plaintiff, defendant's demurrer to the evidence and motion for directed verdict should be overruled. Magnolia Pet. Co. v. McGeeley, 203 Okla. 470, 223 P. 3d 131.

To establish a master's liability to his servant for negligence, three essential elements must be apparent: First, the existence of a duty on the part of the master to protect the servant; second, the failure of the master to perform this duty; and third, injury to the servant proximately resulting from such failure. The duty of furnishing a reasonably safe place in which to work, reasonably safe appliances with which to perform the work, and reasonably careful, prudent, and competent fellow-servants, is a nondelegable duty of the employer. Singer Sewing Machine Co. v. Odom, 172 Okla. 411, 45 P. 2d 473. But as to appliances and the place to work, the obligation is met when the tools furnished and the place to work are such as a reasonably prudent person would furnish under like circumstances. Warden-Pullen Coal Co. v. Wallace, 176 Okla. 604, 56 P. 2d 802.

The defendant contends that it complied with these requirements; that it had done everything that a reasonably prudent person was required to do under the circumstances; that it was not required to furnish its servant with tools, machinery, appliances, and places for work which were absolutely safe, or perfect, or most expensive, or the newest, safest, and best, or those used by others or similar to those used by others, although they might be less dangerous than its own, nor need it furnish those of any particular kind; but that, under its discretion, it was only necessary for it to furnish such instrumentalities and places for work as are reasonably safe and suitable,

and it is sufficient if it does so; citing in support of this contention 56 C.J.S. Master and Servant, §206, p. 913; Palmer v. Wichita Falls & N.W. R. Co., 60 Okla. 205, 159 P. 1115, and other similar cases. Defendant points out that in the Palmer case, supra, it was held that an employer has discretion concerning the tools and appliances which he will furnish his employees, and if the appliances so furnished are sound, and perform the work which they are designed to do, mere proof that one is using tools and appliances of a certain kind, if an accident happens in the use of them, does not tend to show negligence unless it is coupled with some evidence—not mere speculation—that they were not properly performing their function; and the fact that an employee is injured in the course of his employment carries with it no presumption of negligence on the part of the employer, but that such negligence is an affirmative fact for the injured employee to establish by the evidence.

This general rule is not objectionable, and would be applicable in the case at bar unless there was some evidence, or legitimate inferences, not based upon conjecture or mere speculation, that the defendant (master) had not furnished deceased with a reasonably safe place, method and tools with which to do the work, and competent fellow-servants.

If there were safe and unsafe methods of unloading this plate glass and if the defendant (master) failed to see that the safe method was used, then and in that event defendant would be guilty of negligence. Cosden Pipe Line Co. v. Berry, 87 Okla. 237, 210 P. 141.

There is no dispute as to the method used by defendant to unload the plate glass, or that the accident occurred while using such method. Expert wit-nesses testified that it was an unsafe method. Unquestionably the A-frame method used by Dale Williams, outlined above, was a safer method. Experienced witnesses testified that it was a safe method and the one generally used, and it was the method adopted by the defendant immediately after the accidental death of the deceased.

The facts before the jury, and permissive inferences therefrom, were sufficient to justify the jury in finding the defendant guilty of negligence in failing to provide a reasonably safe method of unloading the heavy plate glass from the railroad car, and it is of no material difference, under the circumstances, if it was called an unsafe method of doing the work or an unsafe place to work. Cosden Pipe Line Co. v. Berry, supra. Having sustained one of plaintiff's contentions, we deem it unnecessary to discuss other contentions of the parties herein.

We conclude that the evidence in this case presented a question of fact for the jury to determine as to whether the method adopted by the defendant in unloading the plate glass from a railroad car was reasonably safe, and that, inasmuch as said question was submitted to the jury under proper instructions, the defendant is concluded by the verdict, and the trial court did not err in overruling the defendant's demurrer to the evidence or its motion for a directed verdict. Cosden Pipe Line Co. v. Berry, supra; Consumers Gas Co. v. O'Bannon, 94 Okla. 107, 221 P. 423; Joy v. Pope, 175 Okla. 540, 53 P. 2d 683; Pure Transportation Co. v. Newman, 195 Okla. 173, 155 P. 2d 977.

Judgment affirmed.

ARNOLD, C.J., and CORN, O'NEAL, and BINGAMAN, JJ., concur.